# Exhibit E

## DISTRIBUTION AGREEMENT

This Distribution Agreement ("Agreement") by and between Sun Hong Foods, Inc., a California corporation ("Supplier"), and Outstanding Foods, Inc., a Nevada corporation ("Buyer") is dated February 14, 2019.  Buyer and Supplier are sometimes collectively referred to as the "Parties," or individually as a "Party."

*WHEREA*S, Supplier Sun Hong Foods is one of the national leaders in selling, marketing and distributing fresh king oyster mushrooms (the "Goods") to restaurants, wholesalers, and supermarkets and;

*WHEREAS*, Buyer is a producer, manufacturer and distributor of plant-based snack food products; and

*WHEREAS*, the Parties wish to enter this Distribution Agreement wherein Buyer will purchase Goods from Supplier and Supplier will sell Goods on the terms set forth below.

*NOW, WHEREFORE,* in consideration of the promises and the mutual covenants contained herein, the Parties agree, as follows:

1.  Term: The term of this Agreement shall be one year from the date first mentioned above and may be renewed in writing upon the agreement of both Parties.

2.  Purchase Orders. During the Term, Buyer will purchase the Goods from Supplier and Supplier will fulfill all Buyer purchase orders (PO) for the Goods at the prices set forth below.  Buyer will issue POs in written or electronic form, via facsimile, e-mail or US mail. Buyer will only be obligated to purchase, and Supplier will only be obligated to sell, the quantities of Goods specified in a PO.

3.  Goods and Pricing:

| Description of Goods | Price |
| --- | --- |
| King Oyster Mushrooms | $13.25 per 11-pound case of Goods (approx. $1.2045 per pound) |

Price includes all costs and expenses relating to the purchase of the Goods and preparation of the Goods for shipment. Supplier will meet FDA, USDA and all state food regulations and Buyer's specifications set forth on the attached Exhibit A (collectively, "Specifications").

4.  Shipping Terms:   Supplier will use commercially reasonable efforts to obtain on-time delivery, defined as shipment of the Goods by the agreed upon delivery date as set as 1-2 days after the shipment arrive at Supplier's warehouse to a facility designated by Buyer (initially, Warnock Food Products, Inc.'s facility in Madera, California).  However, shipping dates represent Supplier's best estimate and Supplier shall not be liable for any loss or expense incurred by Buyer or others arising from any failure to meet the scheduled deliveries shown on Buyer's PO confirmation due to force majeure events (described in Section 22

below) and/or for any loss or expense due to Buyer's selection of a particular carrier. The first delivery is estimated to arrive at Buyer's facility Seventy (70) days after the execution date of this Agreement.  Unless otherwise specifically provided in the applicable Purchase Orders, the Goods purchased by Buyer from Supplier shall be shipped FOB Supplier's warehouse whereby title and risk of loss will pass to Buyer upon loading of the Goods from Supplier's loading dock.  Any Products returned by Buyer to Supplier shall be FOB Buyer's (or its designees') facilities. Buyer shall be responsible for all charges in excess of normal pricing which result from Buyer's deviation from normal service or routing for the Goods.

5.  <u>Guaranteed Orders</u>: Buyer will be required to order (and Supplier will be required to accept such order) at least 3200 cases (*i.e.,* $42,400.00) of the Goods every week during the term.

6.  <u>Guaranteed Orders Adjustment Option</u>:  Supplier hereby grants to Buyer an option to change the required order from at least 3200 cases (*i.e.,* $42,400.00) of the Goods every week to at least 3200 cases (*i.e.,* $42,400.00) of the Goods every Two (2) weeks, by delivering to Supplier at least Fifty (50) days prior written notice of Buyer's exercise of this Guaranteed Orders Adjustment Option.

7.  <u>Invoicing; Payment</u>:  Payment is due in full net-30 days from the date of receipt of conforming Goods. Invoices will describe in reasonable detail the amounts payable and any other information necessary for the identification for the Goods.

8.  <u>Inspection</u>. Buyer will have two (2) calendar days following receipt of the Goods to inspect and reject the Goods in compliance with the *California Commercial Code*.  If any Goods are rejected, Buyer may (i) require Supplier to replace the Goods (at Supplier's cost), (ii) require Supplier to issue a credit to Buyer; or (iii) retain the rejected Goods and seek other appropriate remedies.

9.  <u>Packaging</u>. Supplier will properly pack, mark and ship Goods as instructed by Buyer in writing and otherwise in accordance with Specifications and industry standards (including providing a lot number, pack date and/or best by date on boxes of Goods) and will provide Buyer with shipment documentation showing the PO number, Supplier's name and identification number, carrier name, ship-to address, quantity of Goods, number of cases or containers in shipment, bill of lading number, country of origin.

10. <u>Records</u>.  Buyer might, upon reasonable notice to Supplier and within Supplier's reasonable discretion, have access to and the right to inspect Supplier's premises and records and third party audit reports (if applicable), for the purpose of confirming compliance.

11. <u>Confidentiality</u>. Neither Buyer nor Supplier will use or disclose any Confidential Information (defined below) of the other except in connection with the performance of this Agreement and then only to those with a need to know or use such information and who are under an obligation of confidentiality and restrictions on use equivalent to those in this paragraph. "Confidential Information" includes the terms of this Agreement, any non-public information learned through the supply relationship (including tests and results, customer lists, supplier identities, samples and specifications, including the Specifications) and any non-public

information pertaining to a Buyer or Supplier's financial affairs, business systems, marketing strategies, trade secrets, products, product development, recipes, packaging, designs, flavors, equipment, manufacturing process, technology and other technical and commercial information, in each case, to the extent designated as confidential by Buyer or Supplier or of a nature that would be reasonably deemed to be confidential.

12. <u>Representations and Warranties</u>.  Buyer and Supplier represent, warrant and covenant to each other that (A) it has the right and authority to enter into this Agreement, (B) there is no further action necessary to make this Agreement binding on it, and (C) there is no action or investigation pending or threatened that could affect its ability to perform its obligations. Supplier represents, warrants and covenants that, (I) the Goods will not be out-of-date/expired, adulterated, mislabeled or misbranded, (II) the Goods will be of good and merchantable quality, fit for human consumption, and (III) the Goods will be free from defects and conform with Buyer's Specifications.

13. <u>Indemnification</u>.  (A)  By Supplier.  Supplier will indemnify and hold harmless Buyer, its affiliates and each of its and their owners and representatives and their successors and permitted assigns, from and against any and all damages, liabilities, losses, costs and expenses (including attorneys' fees and costs) resulting from claims arising out of or in connection with breach by Supplier of this Agreement, or Supplier's acts or omissions with respect to the Goods. (B)  By Buyer.  Buyer will indemnify and hold harmless Supplier, its affiliates and each of its and their owners and representatives and their successors and permitted assigns, from and against any and all damages, liabilities, losses, costs and expenses (including attorneys' fees and costs) resulting from claims arising out of or in connection with breach by Buyer of this Agreement, or Buyer's acts or omissions with respect to the Goods or its products.

14. <u>Insurance</u>.  Supplier will, at its own expense, maintain, in amounts that are commercially reasonable and sufficient given its business, on a per-occurrence basis, but in no event less than commercial general liability insurance (including product liability and contractual liability insurance) of One Million Dollars ($1,000,000) per occurrence, with an aggregate of no less than One Million Dollars ($1,000,000) for bodily injury including personal injury and property damage. Supplier will name Buyer as an additional named insured under the policy covering the Goods only and upon Buyer's reasonable request, provide a certificate evidencing such coverage.

15. <u>Termination</u>.  Either Party may terminate this Agreement by Notice (defined below) to the other Party upon the occurrence of one or more of the following:  (a) any proceeding in bankruptcy or in reorganization or for the appointment of a receiver or trustee or any other proceedings under any law for the relief of debtors shall be instituted by or against the other Party or if the other Party shall make an assignment for the benefit of creditors; or (b) a Party commits a material breach of any of the terms of this Agreement, which breach is not remedied by such Party to the other Party's reasonable satisfaction within 30 days of Notice of such breach.  Upon termination, the Parties will remain obligated to ship and pay for Goods ordered through the date of termination.  Subject to the indemnification provisions in Section 13, neither Party will be liable to each other for claims by a Party or a Party's

suppliers, contractors or subcontractors, for loss of anticipated profit, unabsorbed overhead, interest on claims, product development and engineering costs, facilities and equipment rearrangement costs or rental, unamortized depreciation costs, and general and administrative burden charges or other similar amounts.

16. <u>Independent Contractor</u>.  The status of the Parties to this Agreement, including its employees and agents, shall be that of independent contractors and not as employees or agents or fiduciaries of the other Party.   Nothing in this Agreement or Purchase Orders shall be construed to create any relationship between the Parties other than that of buyer and distributor/supplier.  Nothing in this Agreement shall be construed as creating any franchise, joint venture, agency, trust or partnership relationship of any kind between the Parties.  The respective businesses of Supplier and Buyer shall be operated separately and apart from each other.  Neither Party shall be in any event held liable or accountable for the acts or omissions of the other Party except as specifically set forth in this Agreement.

17. <u>Severability</u>.  Whenever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement is held to be prohibited by or invalid under applicable law, such provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Agreement.

18. <u>Modifications</u>. Neither this Agreement nor any Schedule attached hereto may be amended, changed, modified or rescinded except in writing signed by both Parties.  Neither Party shall be bound by any terms inconsistent with or additional to the terms and conditions of this Agreement and the Purchase Orders. Failure to enforce any provision of this Agreement will not constitute a waiver of any term hereof.   The waiver of any provision of this Agreement may only be effected by a writing signed by the Party against whom the waiver is sought to be enforced.   No waiver of any of the provisions of this Agreement will be deemed or will constitute a waiver of any other provisions hereof (whether or not similar), nor will any such waiver constitute a continuing waiver unless otherwise expressly so provided.

19. <u>Construction</u>.  The language of English for this Agreement is the language chosen by the Parties to express their mutual intent, and this Agreement shall be construed without regard to any presumption or rule requiring construction against the Party causing the instrument to be drafted.

20. <u>Governing Law and Venue</u>.  This Agreement is made accordance with and shall be governed and construed in accordance with the laws of the State of California, U.S.A., notwithstanding conflict of law principles that would result in the application of laws of another jurisdiction (including the United Nations Convention on Contracts for the International Sale of Goods). The federal and state courts in the Los Angeles County, State of California shall have exclusive jurisdiction and venue over all actions in connection with this Agreement.   The Parties consent to *in personam* jurisdiction in such courts. Buyer and Supplier waive the defense of forum *non conveniens*.

21. The English version of this Agreement, regardless of whether a translation in any other language is or shall be made, shall be the only authentic one. Supplier and Buyer acknowledge that they fully understand English and the terms and conditions of this Agreement.

22. Notice. All notices, requests, demands, changes of address and other communications under this Agreement ("Notice" or "Notices") shall be in writing and shall be deemed to have been duly given on the date of service, if served personally on the Party to whom notice is given, on the next business day if served by nationally recognized overnight courier, or within seventy two (72) hours after mailing if mailed to the Party to whom Notice is to be given, by first class mail, registered or certified, postage prepaid and properly addressed to the Party at its address set forth below or to any other address that either Party may designate by Notice to the other.

 If to Supplier:

 Sun Hong Foods, Inc.
 1105 W Olympic Blvd
 Montebello, California 90640
 Attn: Shuzhen He

 With a copy to:

 Law Offices of Bin Li & Associates
 730 N. Diamond Bar Blvd
 Diamond Bar, California 91765
 Attn: Bin Li, Esq.

 If to Buyer:

 Outstanding Foods, Inc.
 615 Hampton Drive, Unit C-101
 Venice, California 90291
 Attn: Bill Glaser

 with a copy to:

 Garvey Schubert Barer, P.C.
 100 Wall Street – 20th Floor
 New York, New York 10005
 Attn: Hillary H. Hughes, Esq.

23. Force Majeure. In the event of war, fire, explosion, flood, strike, riot, new act of governmental authority, act of God or other contingency beyond the reasonable control of either Party, causing cessation or interruption of performance hereunder (excluding Buyer's payment of Supplier's invoices) of such Party, the performance hereunder (excluding

5

Buyer's payment of Supplier's invoices) of such Party shall be excused for the period of the disability, without liability; provided that the Party is unable to carry out its obligations hereunder shall have, as soon as reasonably practicable after it has actual knowledge of the beginning of any excusable delay, notified the other Party of such delay, of the reason therefore and of the probable duration and consequence thereof.  The Party so excused shall use its best efforts to eliminate the cause of the delay, interruption or cessation and to resume performance of its obligations hereunder with the least possible delay.

24. Entire Agreement.  This Agreement (together with Exhibit A attached hereto) supersedes all prior agreements and understandings between the Parties and constitutes the entire and integrated agreement between the Parties with respect to the subject matter hereof.   This Agreement may be executed in counterparts, all of which, taken together, will constitute the entire Agreement. For purposes of this Agreement, a facsimile or other electronic version of a party's signature, such as a .pdf, printed by a receiving facsimile or printer will be deemed an original signature.

[*Signature Page Follows*]

*IN WITNESS WHEREOF*, the Parties have caused this Agreement to be executed in their respective corporate names by their respective officers thereunto duly authorized.

Accepted and Agreed:

Outstanding Foods, Inc.

By:_____

Bill Glaser
Chief Executive Officer

Sun Hong Foods, Inc.

By:_____

Shuzhen He
President

7

Exhibit A

Certain Specifications

|  | GENERAL APPEARANCE |
|---|---|
| COLOR | White stalk, brown cap |
| VISUAL | Smooth, firm stalk |
| SENSORY | Firm texture, not soft or spongy; strong mushroom flavor; free from foreign and 'off' odors or tastes |
| SHAPE | Flat to slightly rounded dome-shaped cap<br>Straight, cylindrical stalks |
| SIZE | LL Size<br>6-9" length (after cutting bottom 1" at harvest to <u>avoid tough base</u>)<br>2-3" diameter |
| MATURITY | Firm |
|  | **MAJOR DEFECTS** |
| INSECTS | With no evidence of live insects or insect infestation, eg. sciarid fly |
| DISEASE | With evidence of fungal or bacterial rots $\leq 2\%$ |
| TEMPERATURE ABUSE | **Must be stored at 33-35 F**<br>With evidence of dark water-soaked areas Wet, slimy & soft via Temperature change  $\leq 2\%$ |
| PHYSICAL DAMAGE | With cut holes, splits or missing stalks<br>With deep bruises or crushed areas  $\leq 2\%$ |
| PHYSIOLOGICAL | With crooked stems $\leq 2\%$ |
|  | **MICROBIOLOGICAL/MICROBIAL TESTING** |
| SALMONELLA | Negative 375/G |
| E. COLI | <10 CFU/G |

| | |
|---|---|
| GLUTEN | <10ppm |
| **PACKAGING** | |
| Lot Code Format | Lot No: / Box No:<br>MFG date: MO/DA/YR / Time stamp:<br>Best By Date: MO/DA/YR |