JACOB M. HARPER (State Bar No. 259463)
  jharper@dwt.com
JAMES H. MOON (State Bar No. 268215)
  jamesmoon@dwt.com
ARLEEN C. FERNANDEZ (State Bar No. 318205)
  arleenfernandez@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, 24th Floor
Los Angeles, California  90017-2566
Telephone:  (213) 633-6800
Fax:  (213) 633-6899

*Attorneys For Defendants*
*OUTSTANDING FOODS, INC., WILLIAM "BILL" GLASER*
*AND DAVID "DAVE" ANDERSON*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| SUN HONG FOODS, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>OUTSTANDING FOODS, INC., WILLIAM "BILL" GLASER, and DAVID "DAVE" ANDERSON, each individually, and DOES 1 through 10,<br><br>Defendants. | Case No. 2:19-cv-10121 PSG(MAAx)<br>Assigned to the Hon. Philip S. Gutierrez<br><br>**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S APPLICATION FOR RIGHT TO ATTACH ORDER AND ORDER FOR ISSUANCE OF WRIT OF ATTACHMENT**<br><br>**[*Declaration of William Glaser and Evidentiary Objections Filed Concurrently*]**<br><br>Hearing:  February 12, 2020<br>Time:  10:00 a.m.<br>Courtroom:  590<br><br>Complaint Filed:  November 26, 2019 |

1

## <u>TABLE OF CONTENTS</u>

2

**Page**

3

I.      INTRODUCTION ..........................................................................................5

4

II.     FACTUAL BACKGROUND .........................................................................6

5

        A.      Sun Hong Initiates This Action.............................................................6

6

7

        B.      Sun Hong Seeks to Attach Outstanding Foods' Assets ........................7

8

III.    ARGUMENT ..................................................................................................7

9

        A.      Sun Hong's Application Fails for Evidentiary Reasons. ......................7

10

                1.      None of Sun Hong's Invoices Are Authenticated. ....................8

11

                2.      Sun Hong Fails to Offer the Contract as Evidence...................10

12

        B.      Sun Hong Failed to File the Required Undertaking ...........................11

13

14

        C.      Sun Hong's Application Fails on the Merits. ....................................12

15

                1.      Sun Hong Has Not Established the "Probable Validity" of
                        its Claim. ................................................................................13

16

17

                2.      Sun Hong Has Not Established that the Amount Sought Is
                        "Readily Ascertainable." ..........................................................16

18

19

                        a.      Sun Hong's Damages Figure Is Inadequate. ..................16

20

                        b.      Sun Hong's Request for Attorneys' Fees Is
                                Inadequate......................................................................19

21

22

                        c.      Sun Hong's Request for Court Costs Is Inadequate.......20

23

IV.     CONCLUSION .............................................................................................20

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alabado v. French Concepts Inc.*,
    2015 WL 12656282 (C.D. Cal. Aug. 24, 2015) ...................................................16

*Aliya Medcare Finance, LLC v. Nickell*,
    2015 WL 11089594 (C.D. Cal. May 28, 2015).............................................14, 16

*Am. Student Fin. Grp., Inc. v. Aequitas Capital Mgmt., Inc.*,
    2014 WL 12772263 (S.D. Cal. June 18, 2014) ...................................................11

*Am. Title Ins. Co. v. Lacelaw Corp.*,
    861 F.2d 224 (9th Cir. 1988) .................................................................................17

*Blastrac, N.A. v. Concrete Sols. & Supply*,
    678 F. Supp. 2d 1001 (C.D. Cal. 2010)................................................................13

*Broderick v. Prudential Ins. Co. of Am.*,
    No. 04-0719, 2005 U.S. Dist. LEXIS 21471 (C.D. Cal. Mar. 30,
    2005) .......................................................................................................................19

*Cortes v. Metro. Life Ins. Co.*,
    380 F. Supp. 2d 1125 (C.D. Cal. 2005)................................................................19

*Fed. Deposit Ins. Corp. for Indymac Bank, F.S.B. v. PMC Bancorp*,
    No. CV 09-08045, 2010 WL 11597420 (C.D. Cal. Feb. 10, 2010) ....................17

*Hobbs v. Weiss*,
    73 Cal.App. 4th 76 (1999) .......................................................................................7

*Indep. Film Dev. Corp. v. Arriva Capital, LLC*,
    No. CV 11-07233, 2012 U.S. Dist. LEXIS 199914 (C.D. Cal. July
    30, 2012) ................................................................................................................19

*Pos-A-Traction, Inc. v. Kelly-Springfield Tire Co.*,
    112 F. Supp. 2d 1178 (C.D. Cal. 2000)........................................................6, 7, 8

*UPS Capital Corp. v. Carpartsdepot, Inc.*,
    No. 14-7767, 2014 U.S. Dist. LEXIS 199514 (C.D. Cal. Dec. 19,
    2014) ................................................................................................................12, 13

*Vershbow v. Reiner*,
  231 Cal. App. 3d 879, 282 Cal. Rptr. 684 (Ct. App. 1991) ................................. 11

*VFS Fin., Inc. v. CHF Express, LLC*,
  620 F. Supp. 2d 1092 (C.D. Cal. 2009) ......................................................... *passim*

**Statutes**

California Code of Civil Procedure
  §§ 481.010-493.060 ............................................................................. 13
  § 482.040 ................................................................................... 6, 8, 10
  § 482.110 ............................................................................................ 19
  § 483.010(a) .................................................................................. 13, 16
  § 484.090 ............................................................................................ 13
  § 484.510(b) ....................................................................................... 10
  § 485.210(d) ....................................................................................... 10
  § 485.530(b) ....................................................................................... 10
  § 486.010 ............................................................................................ 10
  § 489.210 ............................................................................................ 11
  § 489.220(a) ....................................................................................... 11
  § 489.220(b) ....................................................................................... 11
  § 492.020 ............................................................................................ 10
  § 492.070 ............................................................................................ 10

**Rules**

Federal Rules of Civil Procedure 64 ....................................................... 12

Federal Rules of Evidence 803(6) ....................................................... 8, 9

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiff Sun Hong, Inc. is attempting to attach half-a-million-dollars in property belonging to Defendant Outstanding Foods, Inc. without complying with any of the evidentiary and substantive requirements imposed by controlling law. Sun Hung's Application for Right to Attach Order and Order for Issuance of Writ of Attachment (the Application) should be denied.

This dispute centers on a failed business relationship between Outstanding Foods and Sun Hong.  Outstanding Foods is an innovative food company that sells plant-based foods.  *See* Declaration of William Glaser ("Glaser Decl."), ¶3.  One such product is a meatless bacon chip made from mushrooms.  *Id.*  Outstanding Foods and Sun Hong purportedly entered into an agreement for Sun Hong to supply mushrooms to Outstanding Foods, and for such mushrooms to be delivered to Outstanding Foods' manufacturer, Warnock Food Products, Inc. ("Warnock"). *Id.* at ¶4.  As Sun Hong admits, Outstanding Foods cancelled future orders on September 19, 2019.  Sun Hong has unreasonably construed the purported contract to demand payment for mushrooms shipped long after Outstanding Foods' notice without making any attempt to sell the perishable goods in the marketplace.  Sun Hong instead raced to Court to attach Outstanding Foods' property in California to force a settlement.  But its application was hastily compiled, does not even provide notice of what (if anything) it seeks to attach, and fails on the merits as Sun Hong did not submit any competent evidence or establish their probable entitlement to any relief, let alone the half-million dollars it seeks in this Application.

Sun Hong cannot hastily bully its way to attachment or settlement through its sloppy and deficient Application papers.  As courts recognize, "[a]ttachment is a harsh remedy [that] causes the defendant to lose control of his property before the plaintiff's claim is adjudicated."  *VFS Fin., Inc. v. CHF Express, LLC*, 620 F.

Supp. 2d 1092, 1095 (C.D. Cal. 2009).  Therefore, the requirements for the issuance of a writ of attachment are "strictly construed" against the applicant.  *Id.* As detailed below, Sun Hong's Application fail to meet this rigorous standard.

*First*, Sun Hong has failed to introduce any competent evidence in support of its Application.  The Application must be supported by declarations stating the facts "with particularity."  Cal. Civ. Proc. Code § 482.040.  "At a minimum, this means that the affiant or declarant must show actual, personal knowledge of the relevant facts, rather than the ultimate facts commonly found in pleadings, and such evidence must be admissible and not objectionable."  *Pos-A-Traction, Inc. v. Kelly-Springfield Tire Co.*, 112 F. Supp. 2d 1178, 1182 (C.D. Cal. 2000).  Here, Sun Hong failed to submit evidence regarding the invoices and delivery records purporting to establish the amount of Outstanding Foods' debt.  The alleged amounts owed are all hearsay and Sun Hong did not provide any evidence or testimony establishing an exception (e.g., the business records exception).  Indeed, Sun Hong did not even authenticate the contract between the parties, which was improperly submitted by a witness with no personal knowledge based on "information and belief."

*Second*, the Application fails on the merits for a number of reasons, including Sun Hong's failure to file an undertaking, Sun Hong's failure to establish the "probable validity" of its claims (including that it is entitled to payments and that it mitigated its damages), and Sun Hong's failure to show the damages are readily ascertainable (or to support its damages figures).

For each of these reasons, the Application fails.

## II.   FACTUAL BACKGROUND

### A.   Sun Hong Initiates This Action

Sun Hong initiated this action on November 26, 2019.  (*See* Compl., ECF No. 1.)  Sun Hong's Complaint includes eleven causes of action based on purported violations of the Perishable Agricultural Commodities Act (PACA) and

common law.  The crux of the Complaint is that Outstanding Foods failed to pay Sun Hong for shipments of mushrooms sourced from China under the parties' Distribution Agreement.  Sun Hong also sued (1) William Glaser, an officer and director of Outstanding Foods, and (2) David Anderson, the alleged "Executive Chef & Co-Founder" of Outstanding Foods on secondary theories of liability.

### B.    Sun Hong Seeks to Attach Outstanding Foods' Assets

On December 16, 2019, Sun Hong filed an Application to attach $461,994.45 of unspecified assets belonging to Outstanding Foods.  *See* App., ECF No. 7.

The only substantive evidence submitted in support of the Application was the Declaration of Jay Ding.  *See* ECF No. 7-2.  Mr. Ding is a manager at Sun Hong.  He claims to be "familiar with" Outstanding Foods' "account" and to "have reviewed the [disputed] invoices" at issue.  *Id.* ¶2.  He testified regarding the underlying Distribution Agreement on "inform[ation] and belie[f]," and did not claim any personal knowledge regarding the purported agreement.  *Id.* ¶3, Ex. A.  His declaration also attaches purportedly true and correct copies of the invoices without any attempt to establish their meaning or that they are admissible, e.g., business records of Sun Hong.  *Id.* ¶4, Ex. B.  The other two declarations are from Sun Hong's attorneys regarding attorneys' fees incurred in preparing the Complaint and Application.  *See* ECF No. 7-3, 7-4.

## III.   ARGUMENT

Sun Hong's Application fails because Sun Hong failed to (A) offer basic admissible evidence regarding either invoices at issue or even the contract; (B) provide the required undertaking; or (C) establish its claim on the merits.

### A.    Sun Hong's Application Fails for Evidentiary Reasons.

Sun Hong's Application fails because it did not offer any competent evidence in support of it.  Statutory attachment procedures "are subject to strict construction."  *Hobbs v. Weiss*, 73 Cal. App. 4th 76, 79 (1999); *see also Pos-A-*

*Traction, Inc. v. Kelly-Springfield Tire Co.*, 112 F. Supp. 2d 1178, 1181 (C.D. Cal. 2000) ("Attachment is a purely statutory remedy, which is subject to strict construction."). "The application for a right to attach order must be supported by an affidavit or declaration showing that the applicant, on the facts presented, would be entitled to a judgment on the claim upon which the attachment is based." *VFS*, 620 F. Supp. 2d at 1096. "The affidavit or declaration must state the facts 'with particularity.'" *Id.* (quoting Cal. Civ. Proc. Code § 482.040)). "At a minimum, this means that the affiant or declarant must show actual, personal knowledge of the relevant facts, rather than the ultimate facts commonly found in pleadings, and such evidence must be admissible and not objectionable." *Pos-A-Traction*, 112 F. Supp. 2d at 1182.

Even a cursory examination of Sun Hong's declarations reveal fundamental issues precluding the Court from granting the Application.

### 1.    None of Sun Hong's Invoices Are Authenticated.

As a threshold matter, the information stated on Sun Hong's invoices are hearsay and Sun Hong does not establish any exception. *See VFS*, 620 F. Supp. 2d at 1097 ("All documentary evidence . . . must be presented in admissible form, generally requiring proper identification and authentication, and admissibility as *nonhearsay* evidence or under one or more of the exceptions to the hearsay rule, such as the business records exception.") (emphasis added).

Sung Hong submitted zero testimonial or other evidence establishing, e.g., that the invoices are "business records" under Federal Rule of Evidence 803(6). *See VFS*, 620 F. Supp. 2d at 1098. Sun Hong is missing testimony from any qualified witness that the "record was made at or near the time [of an event] by or from information transmitted by—someone with knowledge," "the record was kept in the course of a regularly conducted activity of a business," or that "making the record was a regular practice of that activity." Fed. R. Evid. 803(6). Mr. Ding merely purports to authenticate the invoices, but does not meet any of the

1  requirements for establishing a hearsay exception for their contents.  *See* Ding

2  Decl. ¶¶ 2-4.  This falls far short of the black-letter legal requirement.  *See* Fed. R.

3  Evid. 803(6) ("all these conditions are shown by the testimony of the custodian or

4  another qualified witness or by a certification . . .").

5       The authenticity of these invoices is critical to Sun Hong's case, and

6  Outstanding Foods has a strong basis to question their validity.  For example,

7  looking at a shipment not in dispute in this lawsuit, Sun Hong issued an invoice

8  with an invoice date of 7/18/2019, a "ship" date of 8/16/2019 (nearly a month

9  later), and a "due date" for payment of 8/17/2019.  Glaser Decl., ¶4, Ex. 1.

10  Outstanding Foods' records from Warnock indicate Warnock received this product

11  on 8/16/2019.  *Id.*  Sun Hong's purported payment deadline in its invoice – just one

12  day after Outstanding Foods allegedly received the goods – directly conflicts with

13  the party's agreement of "full net-30 days from the *date of receipt* of conforming

14  Goods."  Compl., Ex. E, ¶7 (Distribution Agreement) (emphasis added).  Thus,

15  Outstanding Foods challenges the accuracy of the payment date of the invoices.

16       Additionally, Outstanding Foods questions the meaning and seriously doubts

17  the accuracy of the "ship" date in Sun Hong's invoices, particularly in later

18  invoices.  Contrary to the example from the invoice described above (where the

19  invoice was generated much earlier and the ship date was the date the product was

20  actually shipped to Warnock), starting with the invoice issued 9/12/2019, Sun

21  Hong's invoices have the exact same date for the invoice issue date and the "ship"

22  date.  *See* Compl., Ex. D, at 3-16.  The invoices do not indicate if this shipment

23  date is the date the product is shipped from China to Sun Hong, or the date Sun

24  Hong shipped the product to Warnock.  Sun Hong does not explain in its complaint

25  why this change occurred, or if product was actually delivered to Outstanding

26  Foods on this "ship" date.  And, in fact, for many of these invoices where the

27  invoice and ship date match, Outstanding Foods has not been able to confirm that

28  the product was actually delivered *at all* or that such delivery occurred on the date

1  in Sun Hong's invoices.  Glaser Decl., ¶6 (referencing Compl., Ex. D, Invoices

2  65168, 65505, 65768, 65846, 65873, 65874, 65875).  Further confusing the issue is

3  the notation of "coming" in the description section on the final two invoices, 65874

4  and 65875.  *Id.* (Compl.).

5      The entirety of Sung Hong's $428,279.50 damages claim—premised

6  entirely on the purported truth of these hearsay and seemingly inaccurate

7  invoices—fails for this reason alone.

8                    **2.    Sun Hong Fails to Offer the Contract as Evidence.**

9      In addition, Sun Hong does not even properly submit the controlling contract

10  between the parties.  The only evidence Sun Hong offers are conclusory statements

11  from Mr. Ding—based on "inform[ation] and belie[f]"—that Sun Hong and

12  Outstanding Foods entered into the Distribution Agreement.  Ding Decl. ¶ 3.

13      This is improper because "[e]xcept where matters are specifically permitted

14  by this title to be shown by information and belief, each affidavit shall show

15  affirmatively that the affiant, if sworn as a witness, can testify competently to the

16  facts stated therein."  Cal. Civ. Proc. Code § 482.040.  None of the exceptions

17  provided under California law apply to allow testimony on information and belief

18  in support of this element of Sun Hong's proof.  *See* Cal. Civ. Proc. Code

19  § 482.040 comm. ("It should be noted that under this title certain matters may be

20  shown on the plaintiff's information and belief.") (*citing id.* § 484.510(b) (relating

21  to statements that property sought to be attached is not exempt)); *id.* § 485.210(d)

22  (same); *id.* § 485.530(b) (same); *id.* § 486.010 (regarding great or irreparable

23  injury); *id.* § 492.020 (regarding property to be attached is subject to attachment);

24  *id.* § 492.070 (same).  There is no indication of Mr. Ding has any relationship or

25  personal knowledge regarding the foundational contract in this case, or that any

26  exception to the personal knowledge rule applies under California law.  Mr. Ding

27  is not a signatory and his testimony is only that he is "familiar with [Outstanding

28  Foods'] account" and that he "reviewed the invoices" attached to his declaration,

1    without any purported personal knowledge regarding the contract.  Ding Decl. ¶2.
2    The specific evidentiary objections to Sun Hong's submissions are detailed further
3    in Defendants' Objections to Evidence Submitted by Plaintiff in Support of
4    Application for Right to Attach Order and Order for Issuance of Writ of
5    Attachment.

6    　　　Sun Hong has failed to establish the purported contract as competent
7    evidence in support of Sun Hong's Application.

8    　　　**B.    Sun Hong Failed to File the Required Undertaking**

9    　　　Second, Sun Hong did not even supply the required undertaking.

10   　　　"Before issuance of a writ of attachment . . . the plaintiff *shall file* an
11   undertaking to pay the defendant any amount the defendant may recover for any
12   wrongful attachment by the plaintiff in the action."  Cal. Civ. Proc. Code § 489.210
13   (emphasis added).  Courts strictly apply this requirement; failure to do so nullifies
14   the writ.  *Vershbow v. Reiner*, 231 Cal. App. 3d 879, 883–84 (1991) ("[W]e
15   conclude that [Plaintiff] failed to satisfy the provisions of the Attachment Law,
16   which expressly require the posting of an undertaking *prior to* the issuance of a
17   writ of attachment. Absent the prerequisite undertaking, the writ of attachment
18   issued by the clerk of the court was void *ab initio,* and the trial court was correct in
19   refusing to allow [Plaintiff] to execute upon it.")

20   　　　The default undertaking is $10,000, but this Court can increase the amount
21   as appropriate.  Cal. Civ. Proc. Code § 489.220(a), (b).  If this Court "determines
22   that the probably recovery for wrongful attachment exceeds the amount of the
23   undertaking, it shall order the amount of the undertaking increased to the amount it
24   determines to be the probable wrongful attachment if it is ultimately determined
25   that the attachment was wrongful."  *Id.* at (b).  When a plaintiff seeks a large sum
26   to be attached, a court can adjust the undertaking to a more appropriate amount
27   relative to the attachment.  *Am. Student Fin. Grp., Inc. v. Aequitas Capital Mgmt.,*
28   *Inc.*, No. 12-cv-2446-CAB, 2014 WL 12772263, at *4 (S.D. Cal. June 18, 2014)

1  ("The court finds that a reasonable undertaking is $240,000 (about 10% of the
2  attachment amount).").

3      First, Sun Hong has admittedly not submitted any undertaking.  *See* App'n
4  ¶15 ("Plaintiff has not filed an undertaking.").  On that basis alone, this Court
5  should deny its application.

6      Second, even if Sun Hong had paid the default undertaking, it is insufficient
7  in this matter.  Sun Hong seeks to attach $461,994.45 of Outstanding Food's
8  property, a significant amount and disproportionate to the $10,000 default
9  undertaking.  This Court should require an undertaking of at least $100,000
10  (approximately 20% of the demand).

11      **C.   Sun Hong's Application Fails on the Merits.**

12      Even if considered on the merits, Sun Hong's Application pursuant to
13  Federal Rule of Civil Procedure 64 fails miserably.

14      Rule 64 codifies "long-settled federal law providing that in all cases in
15  federal court, whether or not removed from state court, state law is incorporated to
16  determine the availability of prejudgment remedies for the seizure of person or
17  property to secure satisfaction of the judgment ultimately entered."  *VFS Fin., Inc.*
18  *v. CHF Express, LLC*, 620 F. Supp. 2d 1092, 1095 (C.D. Cal. 2009).  "Attachment
19  is a harsh remedy because it causes the defendant to lose control of his property
20  before the plaintiff's claim is adjudicated."  *Id.*  "In California, the procedures and
21  grounds for obtaining orders permitting prejudgment writs of attachment are
22  governed by California Code of Civil Procedure [ ] §§ 481.010, *et seq.*"  *Id.*

23      "Since California's attachment law is purely statutory, it must be strictly
24  construed" against Sun Hong.  *Id.*; *accord UPS Capital Corp. v. Carpartsdepot,*
25  *Inc.*, No. 14-7767, 2014 U.S. Dist. LEXIS 199514, at *10 (C.D. Cal. Dec. 19,
26  2014) ("requirements for the issuance of a writ of attachment are strictly construed
27  against the applicant").  The burden is on the applicant to establish each element

28

necessary for an attachment order by a preponderance of the evidence." *UPS*, 2014 U.S. Dist. LEXIS 199514, at *10.

California's "procedures and grounds for obtaining orders for prejudgment writs of attachment are governed by California Code of Civil Procedure sections 481.010-493.060." *Blastrac, N.A. v. Concrete Sols. & Supply*, 678 F. Supp. 2d 1001, 1004 (C.D. Cal. 2010). Under the California law, the elements necessary for issuance of a writ of attachment include the following, among other things[1]:

- "The plaintiff has established the probable validity of the claim upon which the attachment is based." Cal. Civ. Proc. Code § 484.090
- An attachment may be issued "only in an action on a claim or claims for money, each of which is based upon a contract, express or implied, where the total amount of the claim or claims is a fixed or *readily ascertainable* amount not less than five hundred dollars." Cal. Civ. Proc. Code § 483.010(a) (emphasis added).

Sun Hong's Application fails on both.

### 1.    Sun Hong Has Not Established the "Probable Validity" of its Claim.

"[B]efore an attachment order is issued, the Court *must find* . . . the applicant has established 'the probable validity' of the claim upon which the attachment is based." *VFS*, 620 F. Supp. 2d at 1096 (quoting Cal. Civ. Proc. Code § 484.090; emphasis added). This is true "[w]hether or not the defendant appears in opposition." *Id.*

_____

[1] Other requirements include that the "claim upon which the attachment is based is one upon which an attachment may be issued," "attachment is not sought for a purpose other than the recovery on the claim upon which the attachment is based," and "the amount to be secured by the attachment is greater than zero." Cal. Civ. Proc. Code § 484.090.

To establish the "probable validity" of the claim, the applicant must show "it is more likely than not" it will obtain a judgment against the defendant on its claim. *Id.* "If an applicant fails to rebut a factually-supported defense that would defeat its claims, the applicant has not established probable validity" of its claims. *Aliya Medcare Fin., LLC v. Nickell*, No. 14-7806, 2015 WL 11089594, at *8 (C.D. Cal. May 28, 2015). "In other words, Plaintiff must do more here than establish a prima facie case for breach of contract; he must also show that the defenses raised are less than fifty percent likely to succeed." *Id.* The only claim that Sun Hong attempts to establish is its common law claim for breach of contract. *See* Mem. 5-6.

Sun Hong has not even come close to proving its case.

***First***, as an initial matter and as explained above, the Distribution Agreement was not properly offered as competent evidence, and the invoices purporting to show Sun Hong's damages are unreliable, hearsay and inadmissible.

***Second***, in contrast to Sun Hong's complete lack of evidence, the only admissible evidence in the record (from Outstanding Foods, filed concurrently) demonstrates Sun Hong is unlikely to prove its case as it claims as damages shipments that were cancelled and/or never delivered to Outstanding Foods. For example:

- In early August 2019, an employee of Outstanding Foods cancelled the orders for two shipments of mushrooms. Jay Ding, on behalf of Sun Hong, confirmed the cancellation on August 8. *See* Glaser Decl., ¶7, Ex. 2 (Mr. Ding: "Sorry for the late notice. We already cancelled 2 containers. Around end of Aug and early spetember [sic]. There won't be shipments coming in."). Nonetheless, Sun Hong now improperly seeks payment of $42,400 for the shipment at the end of August. *See* Compl., Ex. D at 4 (Invoice 65505, "ship" 8/27/19).

- An employee of Outstanding Foods cancelled two additional shipments on September 9.  Glaser Decl. at ¶ 9, Ex. 3 at 2–3 (Outstanding Foods employee: "… we would like to hold back 2 more containers in China."; Mr. Ding: "Yes, no problem.").  Per Plaintiff's own admission in its complaint, Outstanding Foods then sent Sun Hong a termination notice on September 19, 2019, but Sun Hong continued to ship product to Outstanding Foods through October 10, 2019.  *See* Compl., ¶¶25, 26.  Although Sun Hong claims that the product shipped from its overseas grower (*Id.* at ¶24), it does not allege the lead time for the specific shipments after it received termination notice.  Its own records attached to the complaint appear to show multiple shipments in October dated after the notice was received.  *Id.*, Ex. D, at 6–9 (showing shipments on September 19, October 3, October 10, and October 17).

*Third*, Sun Hong does not allege when, if at all, Outstanding Foods took possession of such product and, in circumstances where it did not take possession, what Sun Hong did to mitigate its losses after the product was shipped.  As detailed above, Outstanding Foods has reason to question the "ship" dates in Sun Hong's invoices.  *See supra*, at Section III(A)(1).  These shipments continue to "ship" (per Sun Hong's records attached to its complaint) long after Outstanding Foods cancelled its orders.  *See* Compl., ¶¶25, 26 (admitting that after the September 20 cancellation Sun Hong continued to ship product until October 10).  Outstanding Foods has not provided any information or justification to why it failed to mitigate its damages by reselling or repurposing these mushrooms.  On information and belief, Sun Hong did fail to mitigate its damages by not attempting to resell the mushrooms, or is now seeking duplicative damages for monies it was able to recover from reselling the mushrooms.  Glaser Decl., ¶9.  Mr. Glaser specifically asked Jay Ding to share records with Outstanding Foods showing that

1  Sun Hong either attempted to resell the mushrooms or had to dispose of them.  Mr.
2  Ding did not provide such records.  *Id.* at ¶10.

3       Accordingly, Sun Hong is unlikely to prevail on its claim for damages.

4         **2.**      **Sun Hong Has Not Established that the Amount Sought Is**
5              **"Readily Ascertainable."**

6       Sun Hong also fails to meet its burden to establish the amount sought is
7  "readily ascertainable."  An attachment "may be issued only in an action on a
8  claim or claims for money, each of which is based upon a contract, express or
9  implied, where the total amount of the claim or claims is a fixed or readily
10  ascertainable amount not less than five hundred dollars ($500) exclusive of costs,
11  interest, and attorney's fees."  Cal. Civ. Proc. Code § 483.010(a).

12       Courts in California routinely deny attachment applications when the
13  amount sought is not readily ascertainable. *See e.g. Alabado v. French Concepts*
14  *Inc.*, 2015 WL 12656282, at *2-3 (C.D. Cal. Aug. 24, 2015) (denying a writ where
15  the plaintiffs' damages for their wage and hour claims could not be determined by
16  reference to their employment contracts, and plaintiffs provided only generalized
17  estimates of their hours worked); *Aliya Medcare Finance, LLC*, 2015 WL
18  11089594, at *14 (affirming a magistrate judge's decision to deny a plaintiff's writ
19  of attachment on grounds including that the amount sought was not fixed or
20  readily ascertainable).

21       Sun Hong seeks $461,994.45—composed of (a) $453,854.45 in damages,
22  (b) $7,740 in attorneys' fees, and (c) $400 in court costs.  There is inadequate
23  proof to support any component of these figures.

24         **a.**      **Sun Hong's Damages Figure Is Inadequate.**

25       The $453,854.45 in damages is composed of $428,279.50 in unpaid
26  amounts, $4,670.28 in "interest," and $9,846.21 in "expenses."  Ding Decl. ¶4.
27  These figures are problematic.

28

***First***, the $428,279.50 amount is unsupportable given that Sun Hong concedes that "[v]ia letter dated September 19, 2019, Defendants notified Plaintiff of its [sic] decision to terminate the parties' Agreement." Compl. ¶25. As proved by the purported contact (as opposed to Sun Hong's erroneous interpretation), Outstanding Foods was entitled to cease shipments without a 50 day notice period, which only applied to an irrelevant part of the agreement regarding minimum orders. *Compare* Ding Decl., Ex. A ¶6; *with* Compl. ¶24. This judicial admission is binding. *See Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) ("Judicial admissions are formal admissions in the pleadings which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact. Factual assertions in pleadings . . . unless amended, are considered judicial admissions conclusively binding on the party who made them."). It renders $170,650 of the damages amount based on invoices dated after September 19, 2019 unsupported and dubious. *See* Ding Decl., Ex. B at Invoice Nos. 65846-47, 65873-75.

***Second***, on information and belief, Sun Hong failed to mitigate its damages by not attempting to resell the mushrooms, or is now seeking duplicative damages for monies it was able to recover from reselling the mushrooms. Glaser Decl., ¶9. When a defendant asserts a viable mitigation defense, as here, then plaintiff has not fulfilled the elements of the statute to obtain a writ of attachment. *See Fed. Deposit Ins. Corp. for Indymac Bank, F.S.B. v. PMC Bancorp*, No. CV 09-08045, 2010 WL 11597420, at *6 (C.D. Cal. Feb. 10, 2010) ("The amount is also not readily ascertainable because of PMC's mitigation defense."). As shown above, Sun Hong has failed to demonstrate that it has mitigated its losses and, on information and belief, did actually fail to do so. Thus, its damages claims are highly unlikely in the amounts alleged.

***Third***, Sun Hong seeks $4,670.28 in "interest." There is no justification for the 1.5% a month interest rate that Sun Hong seeks to recover. Sun Hong alleges

OPPOSITION TO APPLICATION FOR WRIT OF ATTACHMENT

1    rate is based on fine print in the invoices submitted by Sung Hong.  *See, e.g.*, Ding
2    Decl., ¶ 4, Ex. B at p. 16 of 33 ("Past due accounts subject to interest charge off
3    1.5% per month (18% annually)").  But the purported controlling contract that Sun
4    Hong is trying to enforce is an integrated document that cannot be modified absent
5    Outstanding Foods' express written consent.  *See* Ding Decl., Ex. A ¶24 ("This
6    Agreement. . . supersedes all prior agreements and understandings between the
7    Parties and constitutes the entire and integrated agreement between the Parties with
8    respect to the subject matter hereof."); *id.* ¶18 ("Neither this Agreement nor any
9    Schedule attached hereto may be amended, changed, modified or rescinded except
10   in writing signed by both Parties.  Neither Party shall be bound by any terms
11   inconsistent with or additional to the terms and conditions of this Agreement and
12   the Purchase Orders [of Outstanding Foods].").  Sun Hong's invoices therefore
13   cannot unilaterally impose its unsupported and usurious interest rate.

14         ***Fourth***, Sun Hong gives no explanation for the extra-contractual storage
15   costs for which it invoiced Outstanding Foods.  Sun Hong alleges that Outstanding
16   Foods "purchased from Plaintiff[] Produce valued at the current aggregate amount
17   of not less than $453,854.45."  Compl. ¶26.  However, Sun Hong's own records
18   show that, this sum is not just for produce, but includes multiple other expenses for
19   which there is no explanation or justification.  In one instance, Sun Hong seeks
20   storage fees, as detailed in invoices (invoices which are inadmissible as hearsay).
21   *See* Compl., Ex. D, Invoices 65506, 65847, 65255, 65769 ("Storage fee for King
22   Oyster Container").  Additionally, Sun Hong seeks $9,846.21 in "expenses" with
23   supporting documentation or explanation of how the same is justified under the
24   agreement.  The only evidence provided is in the Declaration of Jay Ding, where
25   he states "[a]dditionally, there has been another $9,846.21 in expenses incurred as
26   a result of Defendant's breach" and includes a hearsay invoice for the amount.
27   Ding Decl., ¶4, Ex. B at p. 33 of 33.  Not only is there no explanation for these
28   expenses, but they are not recoverable under the Distribution Agreement which

1   explicitly states that the mushroom price already includes all costs and expenses.

2   Compl., Ex. E, ¶3 (Listing the price as $13.25 per 11-pound case of King Oyster

3   Mushrooms, and that "Price includes all costs and expenses relating to the

4   purchase of the Goods and preparation of the Goods for shipment.").

### b.      Sun Hong's Request for Attorneys' Fees Is Inadequate.

7          "In the discretion of the court, the amount to be secured by the attachment

8   may include an estimated amount for costs and allowable attorney's fees."  Cal.

9   Civ. Proc. Code § 482.110(b).

10         As an initial matter, it is unclear how much Sun Hong is claiming in

11  attorneys' fees.  In its rush, Sun Hong included contradictory requests for $7,740

12  and $18,798.46.  *See* App'n 2 ($18,798.46); Mem. 6:16 ($7,740).  In any event,

13  there is inadequate factual support for either amount anywhere in the Application

14  papers, including the two conclusory declarations submitted in support.  *See Cortes*

15  *v. Metro. Life Ins. Co.*, 380 F. Supp. 2d 1125, 1129 (C.D. Cal. 2005) ("The fee

16  applicant bears the burden of producing satisfactory evidence 'that the requested

17  rates are in line with those prevailing in the community for similar services by

18  lawyers of reasonably comparable skill, experience and reputation.'"); *Broderick v.*

19  *Prudential Ins. Co. of Am.*, No. 04-0719, 2005 U.S. Dist. LEXIS 21471, at *10

20  (C.D. Cal. Mar. 30, 2005) ("The party requesting attorneys' fees must produce

21  billing records that are detailed enough to withstand scrutiny."); *Indep. Film Dev.*

22  *Corp. v. Arriva Capital, LLC*, No. CV 11-07233, 2012 U.S. Dist. LEXIS 199914,

23  at *13 (C.D. Cal. July 30, 2012) ("Plaintiffs' conclusory assertion in [a] declaration

24  that Plaintiffs have incurred $50,000 in fees is an inadequate evidentiary basis for

25  an award of fees.").

26         The Declaration of Kathryn S. Diemer claims that 20.8 hours were spent by

27  her and her associate on the Complaint and Application.  She recites boilerplate

28  and conclusory language that their rates of $550 and $300 are "fair and reasonable

1  in light of [their] education and experience" without providing any testimony or
2  evidence regarding what "education and experience" they have.  Diemer Decl. ¶4.

3      The Declaration of Jason Klinowski is even less convincing as he simply
4  states the dollar amount ($11,058.46) that he would like to recoup based on work
5  done by "[his] office" during the course of his "representation."  Klinowski Decl.
6  ¶3.  He does not identify who worked on this matter, what they purportedly did, or
7  how much time they spent.  He also does not explain what his "education and
8  experience" entails, or even that the unidentified attorneys in his office have any
9  "education and experience" of note.

10      Like the rest of its Application, Sun Hong's request for attorneys' fees is
11  conclusory and unsupported, and should be denied.

12              **c.      Sun Hong's Request for Court Costs Is Inadequate.**

13      Sun Hong is also claiming $400 in "court costs."  App'n at 2; Mem. at 6:16.
14  There is zero explanation for the cost and no supporting evidence in support of it.

15      Therefore, there is inadequate proof to establish any element of the half-
16  million dollars that Sun Hong purported seeks to attach through its Application.

17  **IV.    CONCLUSION**

18      Outstanding Foods respectfully requests that the Court deny Sun Hong's
19  Application for the procedural, service, evidentiary, and merits reasons stated
20  above.

21  ///
22  ///
23  ///
24  ///
25  ///
26  ///
27  ///
28

*[Signature on following page]*

1   Dated:  February 5, 2020

2

DAVIS WRIGHT TREMAINE LLP

3   By: _____

4           Jacob M. Harper

5   *Attorneys for Defendants*
    *OUTSTANDING FOODS, INC.,*
6   *WILLIAM "BILL" GLASER AND*
    *DAVID "DAVE" ANDERSON*
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28