JACOB M. HARPER (State Bar No. 259463)
  JHarper@dwt.com
JAMES H. MOON (State Bar No. 268215)
  JamesMoon@dwt.com
ARLEEN C. FERNANDEZ (State Bar No. 318205)
  ArleenFernandez@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, 24th Floor
Los Angeles, California 90017-2566
Telephone: (213) 633-6800
Fax: (213) 633-6899

ASHLEY VULIN (*pro hac vice forthcoming*)
  AshleyVulin@dwt.com
DAVIS WRIGHT TREMAINE LLP
Suite 2400, 1300 SW Fifth Avenue
Portland, Oregon 97201-5610
Telephone: (503) 241-2300
Fax: (503) 778-5299

Attorneys for Defendants
OUTSTANDING FOODS, INC.,
WILLIAM GLASER, AND
DAVID ANDERSON

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| SUN HONG FOODS, INC., | Case No. **2:19-cv-10121-PSG (MAAx)** |
| Plaintiff, | **THIRD-PARTY COMPLAINT AGAINST WARNOCK FOOD PRODUCTS, INC., CALBEE AMERICA, INC., AND KRAIG RAWLS** |
| vs. | |
| OUTSTANDING FOODS, INC., WILLIAM "BILL" GLASER, and DAVID "DAVE" ANDERSON, each individually, and DOES 1 through 10, | Assigned to the Hon. Philip S. Gutierrez, Court Room 6A |
| Defendants. | Action Filed: November 26, 2019 |

OUTSTANDING FOODS, INC.,

                    Third-Party Plaintiff,

      vs.

WARNOCK FOOD PRODUCTS, INC.,
CALBEE AMERICA, INC., AND
KRAIG RAWLS

           Third-Party Defendants.

**JURY TRIAL DEMANDED**

Defendant and Third-Party Plaintiff Outstanding Foods, Inc. (Outstanding Foods) hereby alleges the following claims against Third-Party Defendants Warnock Food Products, Inc. (Warnock), Kraig Rawls (Rawls), and Calbee America, Inc. (Calbee America or Calbee) as follows:

## NATURE OF THE CASE

1.     Outstanding Foods is an innovative food company that develops and markets great-tasting, nutritious, and high-quality plant-based foods.

2.     One such product is Outstanding Foods' "Pig Out" snack chips, a meatless "bacon-like" chip made from mushrooms.

3.     Outstanding Foods contracted with Plaintiff Sun Hong Foods, Inc. (Sun Hong) an alleged national leader in selling, marketing, and distributing fresh king oyster mushrooms, for the mushrooms to be used in its snack chip product.

4.     Outstanding Foods likewise entered into a contract with Warnock, whereby Warnock agreed to manufacture and distribute the "Pig Out" snack chips.

5.     Warnock breached its obligations to Outstanding Foods by regularly failing to follow agreed-upon, warranted, and/or commercially reasonable procedures in cooking, packaging, and storing the products and constituent ingredients, which resulted in production delays and spoiled, unmerchantable, and/or out-of-specification product.

6.     Sun Hong has now brought claims against Outstanding Foods based on purported violations of the Perishable Agricultural Commodities Act ("PACA") and common law.  Sun Hong alleges that Outstanding Foods dissipated Sun Hong's PACA trust assets by issuing checks or otherwise making payment to entities or individuals other than Sun Hong.

7.     Outstanding Foods seeks disgorgement of the PACA trust assets and indemnification from Warnock because it is responsible and/or liable for any claims, losses, or damages that Sun Hong may have against Outstanding Foods.

**THE PARTIES**

8.     Outstanding Foods, Inc. is a Nevada Corporation with its principal place of business at 615 Hampton Drive, C101, Venice, Los Angeles, California.

9.     Warnock Food Products, Inc. is a California corporation with its principal place of business at 20237 Masa Street, Madera, California 93638.

10.     Kraig Rawls is an individual who, upon information and belief, resides at 713 Chateau Place, Madera, CA 93637.  Outstanding Foods is informed and believes, and thereupon alleges that, at all times herein mentioned, Mr. Rawls was and is Warnock's Chief Executive Officer.

11.     Calbee America, Inc. is a California corporation with its principal place of business at 2600 Maxwell Way, Fairfield, California 94534.  On information and belief, Calbee America is a successor-in-interest to Defendant Warnock Food Products, Inc.

**JURISDICTION AND VENUE**

12.     This Court has federal question jurisdiction over the PACA claims between Plaintiff Sun Hong Foods, Inc. and Defendant and Third-Party Plaintiff Outstanding Foods, Inc.

13.     The claims asserted in this Third-Party Complaint arise out of the same facts and circumstances as those claims between Plaintiff Sun Hong Foods, Inc. and Defendant and Third-Party Plaintiff Outstanding Foods, Inc., so that the Court may exercise supplemental jurisdiction over it under 28 U.S.C. § 1367(a).

14.     This Court also has federal question jurisdiction over the PACA claim asserted in this Third-Party Complaint, and supplemental jurisdiction over the state law claims.

15.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this district and because Plaintiff filed its Complaint in this judicial district.

16.     Third-Party Defendants are residents of California and thus subject to

the personal jurisdiction of this Court.

17.    The Third-Party Complaint is properly brought under Federal Rule of Civil Procedure 14(a).

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

### The Warnock Agreement

18.    In or about January 2019, Outstanding Foods and Warnock entered into an oral contract pursuant to which Warnock agreed to manufacture and package Outstanding Foods' products.

19.    The parties agreed that Warnock would follow commercially reasonable practices to manufacture and package for sale Outstanding Foods' products in accordance with Outstanding Foods' protocols, specifications, policies, and procedures.  Included in these protocols, specifications, policies, and procedures was the requirement that Warnock change the filter on its fryers regularly to avoid the product developing unpalatable flavors.

20.    The contract also required that Warnock store all ingredients and finished products consistent with instructions included on product labels, in addition to other requirements.

21.    Warnock was also in charge of inspecting the mushrooms delivered by Sun Hong to its warehouse facility in Madera, California and informing Outstanding Foods of whether each shipment conformed to Outstanding Foods' specifications.

22.    Warnock understood and agreed to perform these and other obligations, including that it must follow all applicable regulations, protocols, specifications, policies, and procedures.

### Warnock Fails to Properly Store, Cook, and Package the Product

23.    During the course of the parties' relationship, Warnock regularly failed to meet its promises to follow agreed-upon, warranted, and/or commercially reasonable procedures in cooking, packaging, and storing the products and

1  constituent ingredients, which resulted in production delays and spoiled,

2  unmerchantable, and/or out-of-specification product.

3      24.    Among other things, Warnock used untrained staff that did not follow

4  proper manufacturing protocols; failed to follow product specifications when

5  manufacturing, storing, and packaging product; failed to store ingredients and

6  finished products below specified temperatures; mixed ingredients in non-

7  conforming ratios; failed to appropriately change filters in its production equipment;

8  allowed ants to infest its facilities; stored gluten-containing products in one or more

9  facilities designated "gluten free"; failed to ensure that packaging materials were

10  removed prior to the product being fried and/or distributed to consumers; failed to

11  timely bag product; and improperly sealed product bags, in addition to other

12  significant violations of applicable regulations, protocols, specifications, policies,

13  and procedures.

14      25.    Outstanding Foods undertook good-faith, reasonable efforts to notify

15  Warnock of these manufacturing and storage problems and work with Warnock to

16  help Warnock cure its problems.

17      26.    Notwithstanding these efforts, Warnock continued to render defective

18  performance.  In a meeting held on or about July 25, 2019, Mario Sanchez,

19  Warnock's Plant Manager, agreed with Outstanding Foods' assessment that the

20  product being generated by Warnock was not palatable, had burnt or rancid flavors,

21  and even spit out some of product due to its inedible taste and/or texture.

22  Nevertheless, the problems described herein were not remedied and continue to

23  plague Warnock's production process.

24      **Warnock's Defective Performance Results in an Unsellable Product**

25      27.    Warnock's defective performance produced more than ten (10)

26  truckloads of bagged and boxed product that must be disposed of and cannot be sold

27  to consumers, worth more than $1 million in lost product alone and at least $2

28  million in lost sales.

28.     Additionally, Warnock's defective performance has harmed Outstanding Foods' reputation with customers, retailers, and investors.

### Calbee America Acquires Warnock

29.     On information and belief, on or about October 29, 2019, Defendant Calbee America, Inc. and Warnock entered into an agreement whereby Calbee acquired substantially all of the assets and liabilities of Warnock, including Warnock's goodwill, contracts, debts, credit terms and accounts payable.  On further information and belief, Calbee is liable to Outstanding Foods as a successor in interest to Warnock because Calbee continued the business of Warnock, merged with Warnock, and/or assumed the liabilities of Warnock.

### COUNT ONE

### (Disgorgement of PACA Assets)

### (Against Warnock)

30.     Outstanding Foods realleges and incorporates by reference the allegations of paragraphs 1 to 30, above.

31.     Outstanding Foods has made certain payments to Warnock in exchange for Warnock processing and packaging the mushrooms that Sun Hong alleges are protected under a PACA trust.

32.     Sun Hong has sued Outstanding Foods for dissipation of the PACA trust assets.

33.     Warnock is not a bona fide purchaser of the PACA trust assets.

34.     Warnock received trust assets with notice of the breach of the trust.

35.     While Outstanding Foods vehemently disputes the alleged dissipation claims, should a Court find that Outstanding Foods is liable to Sun Hong, Warnock is in possession, in whole or in part, of those PACA trust assets.

36.     Warnock must disgorge the trust assets to Outstanding Foods for the benefit of Sun Hong.

## COUNT TWO

### (Breach of Contract)

### (Against Warnock and Calbee America)

37. Outstanding Foods realleges and incorporates by reference the allegations of paragraphs 1 to 36, as set forth above.

38. In or about January 2019, Outstanding Foods and Warnock entered into an oral contract pursuant to which Warnock agreed to manufacture and package Outstanding Foods' products. The parties agreed that Warnock would follow commercially reasonable practices to manufacture and package for sale Outstanding Foods' products in accordance with Outstanding Foods' protocols, specifications, policies, and procedures. Included in these protocols, specifications, policies, and procedures was the requirement that Warnock change the filter on its fryers regularly to avoid the product developing unpalatable flavors. The contract also required that Warnock store all ingredients and finished products consistent with instructions included on product labels, in addition to other requirements.

39. Warnock was also required to inspect the mushrooms delivered by Sun Hong to its warehouse facility in Madera, California and inform Outstanding Foods of whether each shipment conformed to Outstanding Foods' specifications.

40. Warnock understood and agreed to perform these and its other obligations, including that it must follow all applicable regulations, protocols, specifications, policies, and procedures, as set forth herein.

41. Outstanding Foods did all, or substantially all, of the significant things that the contract required it to do, including but not limited to providing Warnock with protocols, specifications, policies, and procedures that allowed Warnock to manufacture palatable and commercially appealing products.

42. Warnock failed to conform to the agreement and otherwise breached the contract by failing to conform to Outstanding Foods' protocols, specifications, policies, and procedures, as Warnock had agreed to do, as set forth herein.

THIRD-PARTY COMPLAINT

43.     Among other things, Warnock used untrained staff that did not follow proper manufacturing protocols; failed to properly inspect the mushrooms delivered by Sun Hong and notify Outstanding Foods of any defects; failed to follow product specifications when manufacturing, storing, and packaging product; failed to store ingredients and finished products below specified temperatures; mixed ingredients in non-conforming ratios; failed to appropriately change filters in its production equipment; allowed ants to infest its facilities; stored one or more gluten-containing products in one or more facilities designated "gluten free"; failed to ensure that packaging materials were removed prior to the product being fried and/or distributed to consumers; failed to timely bag product; and improperly sealed product bags, in addition to other significant violations of applicable regulations, protocols, specifications, policies, and procedures.

44.     Outstanding Foods was harmed by Warnock's breach and such breach was a substantial factor in causing Outstanding Foods' harm.

45.     As a direct and proximate result of Warnock's breaches, Outstanding Foods has suffered damages in an amount to be proven at trial, but of at least $1 million in lost product alone and at least $2 million in lost sales.

46.     On information and belief, Calbee is liable to Outstanding Foods as a successor in interest to Warnock because Calbee continued the business of Warnock, merged with Warnock, and/or assumed the liabilities of Warnock.

## COUNT THREE

### (Fraud)

### (Against Warnock, Rawls, and Calbee America)

47.     Outstanding Foods realleges and incorporates by reference the allegations of paragraphs 1 to 46, as set forth above.

48.     Warnock and Rawls misrepresented to Outstanding Foods that Warnock would manufacture and/or package Outstanding Foods' products consistent with Outstanding Foods' protocols, specifications, policies, and

procedures and/or good industry practices.

49.   Warnock and Rawls' misrepresentations include but are not limited to the following representative examples.  Similar instances occurred both before and after the examples set forth below, including other misrepresentations that occurred earlier in 2018 and 2019:

a)   When Warnock began to manufacture Outstanding Foods' products for commercial distribution in or about January 2019, Warnock understood and had represented to Outstanding Foods personnel that it would use a double-filtration system, also known as a continuous filtration system, to manufacture Outstanding Foods' products.  As the parties understood, a double- or continuous-filtration system allowed Warnock to change the filters regularly, which they understood to be necessary for Outstanding Foods' products to have a palatable taste and texture.  In particular, before it started to manufacture Outstanding Foods' products for commercial distribution, Warnock agreed to change regularly the filters on the equipment it used to manufacture Outstanding Foods' products.  In email correspondence from Dave Anderson, Outstanding Foods' Head Chef, dated on or about June 6, 2019, Outstanding Foods directed Warnock, through President Kraig Rawls and Warnock Maintenance Manager Neil Coen, to operate a continuous filtration system when manufacturing Outstanding Foods' products, and Warnock did not decline or otherwise reject those instructions.

b)   In emails exchanged on or about October 26-29, 2018, Mr. Rawls represented that Warnock would produce Outstanding Foods' products using a system with a continuous filter.

c)   In a meeting held on or about July 28, 2019, Mr. Anderson and Zhanna Godkin, Outstanding Foods' Operations Manager, met in the office of

8

Mr. Rawls to discuss Warnock's ongoing production problems, resulting in Outstanding Foods products with burnt or other unpalatable flavors. Mr. Rawls admitted that despite Warnock's prior representations that it would do so, Warnock was not changing the filters on its equipment regularly. Outstanding Foods repeated the instruction that regular filter changes was a mandatory part of the manufacturing process. Mr. Anderson agreed that Warnock would regularly change the filters on its equipment. In a conversation held on or about August 1, 2019, Warnock employees Gustavo and Estella confirmed to Mr. Anderson and Ms. Godkin that prior to the July 28, 2019 meeting, Warnock did not regularly change the filters on its equipment when it was making Outstanding Foods' products, despite its previous representations that it would do so.

d) On or about August 6, 2019, Mr. Sanchez, Warnock's Plant Manager, emailed Mr. Anderson, among others, and represented that Warnock would "continue to change filters every hour." This representation was false when made or made with reckless disregard for Warnock's willingness and/or ability to perform, as set forth herein.

e) On August 20, 2019, in a meeting with Warnock personnel at Warnock's production facilities, Mr. Anderson was told that Warnock was changing filters once per shift, which was inconsistent with Warnock's prior representations that Warnock would change filters every hour. In a telephone conversation that same day, Mr. Sanchez and Mark Flores, Warnock's Daily Plant Manager, represented that Warnock would begin to change the filters hourly, despite Warnock's previous failure to honor its agreement to change filters hourly. However, a Warnock employee named Jose confirmed that later on the day of August 20, 2019—after Warnock had again represented that it

THIRD-PARTY COMPLAINT

would change the filters every hour—that Warnock had again changed the filters only once per shift.

f)   On August 23, 2019, on a telephone call with Warnock and Outstanding Foods personnel, Mr. Sanchez promised that Outstanding Foods' manufactured product would be transported from a facility that lacked temperature control, for storage in a temperature controlled warehouse, on a daily basis; that seasoning for the Outstanding Foods products would be transported from the temperature-controlled main plant to the manufacturing facility "as needed daily"; and that product would be bagged daily.  Ms. Godkin attended the call and heard Warnock's promises, which it then documented in an email dated August 23, 2019, from Mr. Sanchez to Ms. Godkin and others.

g)   In an email from Mr. Sanchez to Ms. Godkin dated August 30, 2019, Warnock affirmed that its personnel would bag Outstanding Foods' products twice weekly, store seasoning and bagged products in a temperature-controlled environment, and increase the frequency of filter changes to once-per-hour, when in fact Warnock continued to bag product only when staff was available and not twice weekly as it previously agreed to do.  Mr. Sanchez's August 30, 2019, email also confirmed that Warnock's prior representations that it would change filters hourly were false when made or made with willful disregard for their truth.

50.   Warnock and Rawls knew that the representations described herein were not true when the representations were made or were made recklessly and without regard for their truth because Warnock and Rawls knew or should have known that Warnock did not have that capabilities required to manufacture and/or package Outstanding Foods' products consistent with Outstanding Foods' protocols, specifications, policies, and procedures and/or good industry practices.

51.     Warnock and Rawls intended that Outstanding Foods rely on these and other misrepresentations because they knew that Outstanding Foods would enter into the agreement with Warnock and continue the working relationship as a result of these misrepresentations.

52.     Outstanding Foods reasonably relied on Warnock's and Rawls' representations set forth herein.  Outstanding Foods' reliance on these misrepresentations was reasonable because Warnock is a commercial food packer that held itself out to Outstanding Foods and the public as having specialized skill and expertise in producing snack products, including new and innovative products.

53.     Warnock's and Rawls' misrepresentations were material.  Outstanding Foods would not have entered into any manufacturing agreement with Warnock, or would not have continued the working relationship, if it had reason to know that Warnock could not or would not comply with the representations set forth herein, including Warnock's representation that it would follow Outstanding Foods' protocols, specifications, policies, and procedures.

54.     Warnock's and Rawls' misrepresentations, and Outstanding Foods' reliance on their misrepresentations, were substantial factors in causing the harms suffered by Outstanding Foods.

55.     Outstanding Foods has been harmed by Warnock's and Rawls' fraudulent conduct in an amount to be proven at trial, but of at least $1 million in lost product alone and at least $2 million in lost sales.

56.     On information and belief, Calbee is liable to Outstanding Foods as a successor in interest to Warnock because Calbee continued the business of Warnock, merged with Warnock, and/or assumed the liabilities of Warnock.

## COUNT FOUR

### (Negligent Misrepresentation)

### (Against Warnock, Rawls, and Calbee America)

57.     Outstanding Foods realleges and incorporates by reference the

allegations of paragraphs 1 to 56, as set forth above.

58.     Warnock and Rawls misrepresented to Outstanding Foods that Warnock would manufacture and/or package Outstanding Foods' products consistent with Outstanding Foods' protocols, specifications, policies, and procedures and/or good industry practices.

59.     Warnock's and Rawls' misrepresentations include but are not limited to the following representative examples in Paragraph 77.

60.     Warnock and Rawls had no reasonable ground for believing these misrepresentations were true when made because they knew or should have known that Warnock did not have that capabilities required to manufacture and/or package Outstanding Foods' products consistent with Outstanding Foods' protocols, specifications, policies, and procedures and/or good industry practices.

61.     Warnock and Rawls intended that Outstanding Foods rely on these and other misrepresentations because they knew that Outstanding Foods would enter into the agreement with Warnock and continue the working relationship as a result of these misrepresentations.

62.     Outstanding Foods reasonably relied on Warnock's and Rawls' representations set forth herein.  Outstanding Foods' reliance on these misrepresentations was reasonable because Warnock is a commercial food packer that held itself out to Outstanding Foods and the public as having specialized skill and expertise in producing snack products, including new and innovative products.

63.     Warnock's and Rawls' misrepresentations were material.  Outstanding Foods would not have entered into any manufacturing agreement with Warnock, or would not have continued the working relationship, if it had reason to know that Warnock could not or would not comply with the representations set forth herein, including Warnock's representation that it would follow Outstanding Foods' protocols, specifications, policies, and procedures.

64.     Warnock's and Rawls' misrepresentations, and Outstanding Foods'

THIRD-PARTY COMPLAINT

reliance on their misrepresentations, were substantial factors in causing the harms suffered by Outstanding Foods.

65.     Outstanding Foods has been harmed by Warnock's and Rawls' negligent conduct in an amount to be proven at trial, but of at least $1 million in lost product alone and at least $2 million in lost sales.

66.     On information and belief, Calbee is liable to Outstanding Foods as a successor in interest to Warnock because Calbee continued the business of Warnock, merged with Warnock, and/or assumed the liabilities of Warnock.

## COUNT FIVE

### (Promissory Estoppel)

### (Against Warnock and Calbee America)

67.     Outstanding Foods realleges and incorporates by reference the allegations of paragraphs 1 to 66, as set forth above.

68.     Warnock made clear and unambiguous promises to Outstanding Foods to do the following, among other things: comply with agreed-to manufacturing protocols; comply with Outstanding Foods' product specifications when manufacturing products; change filters on Warnock's equipment at such intervals to produce a palatable product for commercial sale; store ingredients and finished products consistent with product labels and good industry practice; use adequate quality control procedures to produce Outstanding Foods' products; and/or package Outstanding Foods' products for sale using commercially reasonable practices.

69.     Outstanding Foods relied on Warnock's promises set forth herein.

70.     Warnock breached one or more of the promises set forth herein.

71.     Outstanding Foods' reliance on Warnock's promises was foreseeable and reasonable because Warnock is a commercial food packer that held itself out to Outstanding Foods and the public as having specialized skill and expertise in producing snack products, including new and innovative products.

72.     Injustice can only be avoided by enforcement of Warnock's promises

to Outstanding Foods.

73.     On information and belief, Calbee is liable to Outstanding Foods as a successor in interest to Warnock because Calbee continued the business of Warnock, merged with Warnock, and/or assumed the liabilities of Warnock.

## COUNT SIX

### (Unjust Enrichment)

### (Against Warnock and Calbee America)

74.     Outstanding Foods realleges and incorporates by reference the allegations of paragraphs 1 to 73, as set forth above.

75.     Substantial benefits have been conferred upon Warnock by Outstanding Foods through its payment of Warnock Foods' invoices for products that were rendered unsellable as a result of Warnock's conduct described herein. Warnock knowingly and willingly accepted and enjoyed these benefits.

76.     Warnock either knew or should have known that the payments rendered by Outstanding Foods were given and received with the expectation that the unsellable product would have the qualities, characteristics, ingredients, and suitability for consumption represented and warranted by Warnock.

77.     The unsellable product delivered to Outstanding Foods by Warnock did not have the qualities, characteristics, ingredients, and suitability for consumption represented and warranted by Warnock.  As such, it would be inequitable for Warnock to retain the benefit of Outstanding Foods' payments under these circumstances.

78.     Warnock's acceptance and retention of these benefits under the circumstances alleged herein make it inequitable for Warnock to retain the benefits without payment of the value to Outstanding Foods.

79.     On information and belief, Calbee is liable to Outstanding Foods as a successor in interest to Warnock because Calbee continued the business of Warnock, merged with Warnock, and/or assumed the liabilities of Warnock.

80.     Outstanding Foods is entitled to recover from Warnock and Calbee all amounts wrongfully collected and improperly retained by Warnock and Calbee, plus interest thereon.

## COUNT SEVEN

### (Quantum Meruit)

### (Against Warnock and Calbee America)

81.     Outstanding Foods realleges and incorporates by reference the allegations of paragraphs 1 to 80, as set forth above.

82.     Outstanding Foods paid Warnock for the production of product that was not commercially sellable.

83.     The fair and reasonable value of unsellable product paid for by Outstanding Foods will be proven at trial, but based on Outstanding Foods' reasonable investigation to date, exceeds $1 million.

84.     Warnock has not returned any of the payments made for unsellable products it received from Outstanding Foods.

85.     On information and belief, Calbee is liable to Outstanding Foods as a successor in interest to Warnock because Calbee continued the business of Warnock, merged with Warnock, and/or assumed the liabilities of Warnock.

86.     Outstanding Foods is entitled to compensatory damages in an amount to be proven at trial.

## COUNT EIGHT

### (Breach of Good Faith and Fair Dealing)

### (Against Warnock and Calbee America)

87.     Outstanding Foods realleges and incorporates by reference the allegations of paragraphs 1 to 86, as set forth above.

88.     Outstanding Foods and Warnock entered into an oral contract pursuant to which Warnock agreed to use commercially reasonable practices to manufacture and package for sale Outstanding Foods' products in accordance with Outstanding

Foods' protocols, specifications, policies, and procedures.

89.   Through this contract, Warnock had a duty to perform according to the implied covenant of good faith and fair dealing.

90.   Warnock breached this covenant by, among other things, falsely representing that it could manufacture and/or package Outstanding Foods' products consistent with Outstanding Foods' protocols, specifications, policies, and procedures and/or good industry practices.

91.   As a direct and proximate result of Warnock's breaches of the covenant of good faith and fair dealing, Outstanding Foods has suffered damages in an amount to be proven at trial, but that are currently in excess of $3 million dollars.

92.   On information and belief, Calbee is liable to Outstanding Foods as a successor in interest to Warnock because Calbee continued the business of Warnock, merged with Warnock, and/or assumed the liabilities of Warnock.

<u>**COUNT NINE**</u>

**(Equitable Indemnity)**

**(Against Warnock and Calbee America)**

93.   Outstanding Foods realleges and incorporates by reference the allegations of paragraphs 1 to 92, as set forth above.

94.   Outstanding Foods denies any wrongdoing or form of liability in connection with the matters complained of in Sun Hong's Complaint.  However, in the event Outstanding Foods is held liable to Sun Hong or any other party, such liability will be the result of and caused by the breaches, ratification, negligence, carelessness, acts, or omissions or other fault of Warnock, and not the result of or caused by the ratification, negligence, carelessness, acts or omissions of Outstanding Foods.  In the event that Outstanding Foods is held liable to Sun Hong or any other party in the principal action, such liability only arises because, among other things, Warnock failed to use reasonable care and failed to meet its promises to follow agreed-upon, warranted, and/or commercially reasonable procedures in

cooking, packaging, and storing the products and constituent ingredients, which resulted in production delays and spoiled, unmerchantable, and/or out-of-specification product.

95.    Outstanding Foods has been, and will continue to be, forced to incur attorneys' fees and expenses in defending itself against Sun Hong's claims.

96.    Warnock's conduct was a substantial, if not the sole, factor in causing harm to Sun Hong.

97.    Accordingly, Outstanding Foods is entitled to equitable indemnity of the entire amount of any liability, if any, from Warnock.

98.    On information and belief, Calbee is liable to Outstanding Foods as a successor in interest to Warnock because Calbee continued the business of Warnock, merged with Warnock, and/or assumed the liabilities of Warnock.

## COUNT TEN

### (Declaratory Relief)

### (Against Warnock and Calbee America)

99.    Outstanding Foods realleges and incorporates by reference the allegations of paragraphs 1 to 98, as set forth above.

100.    Warnock materially breached its contractual obligations to Outstanding Foods by failing to perform obligations it agreed to perform as set forth herein.

101.    Each of these failures constitutes a separate and independent breach of the Contract.  These breaches deprived Outstanding Foods of its contractual rights and the consideration it was entitled to receive.

102.    On information and belief, Calbee is liable to Outstanding Foods as a successor in interest to Warnock because Calbee continued the business of Warnock, merged with Warnock, and/or assumed the liabilities of Warnock.

103.    As a result, Outstanding Foods is under no continuing obligation to Warnock and/or Calbee, including any obligations related to payment of invoices.

104.    As a result, Outstanding Foods seeks and is entitled to a judicial

THIRD-PARTY COMPLAINT

declaration that it is under no continuing obligations to pay Warnock and/or Calbee's invoices.

## **PRAYER**

1.   That judgment be entered in favor of Outstanding Foods on the claims asserted herein;

2.   For actual damages, punitive damages, and any other monetary relief as may be provided under the counts alleged herein, in an amount to be determined at trial;

3.   For an award of compensatory damages in an amount to be proven at trial.

4.   For restitution in an amount to be proven at trial;

5.   For disgorgement and other equitable relief;

6.   For a declaration that Outstanding Foods acted within its rights when it suspended payment to Warnock and/or Calbee America for products that were not sellable, resulting from the actions described above;

7.   For damages incurred as result of Sun Hong's lawsuit, including the amount of any judgment entered in favor of Sun Hong against Outstanding Foods, plus interest, penalties, late fees, attorneys' fees and costs;

8.   For leave to amend the pleadings as justice may require to state other claims or to conform to proof as entered at trial;

9.   For such other and further relief as the Court deems just or equitable.

///
///
///
///
///

*[signature on the following page]*

DATED: February 7, 2020

DAVIS WRIGHT TREMAINE LLP
JACOB M. HARPER
JAMES MOON
ARLEEN FERNANDEZ
ASHLEY VULIN *(PRO HAC VICE FORTHCOMING)*


By:＿＿＿＿/s/ Jacob M. Harper＿＿＿＿
＿＿＿＿＿＿＿Jacob M. Harper

Attorneys for Defendant
OUTSTANDING FOODS, INC.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Outstanding Foods demands a trial by jury of all issues raised by the pleadings which are triable by jury.

DATED: February 7, 2020

DAVIS WRIGHT TREMAINE LLP
JACOB M. HARPER
JAMES MOON
ARLEEN FERNANDEZ
ASHLEY VULIN *(PRO HAC VICE FORTHCOMING)*

By:_____/s/ Jacob M. Harper_____
Jacob M. Harper

Attorneys for Defendant
OUTSTANDING FOODS, INC.