1
2
3
4
5
6
7
8
9
10

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

11
12
13
14
15
16
17

| | |
|---|---|
| SUN HONG FOODS, INC., | Case No. 2:19-cv-10121-PSG-MAA |
| Plaintiff, | **ORDER DENYING PLAINTIFF'S APPLICATION FOR WRIT OF ATTACHMENT AND RIGHT TO ATTACH ORDER (ECF NO. 7)** |
| v. | |
| OUTSTANDING FOODS, INC. et al., | |
| Defendants. | |

18

19    **I.    INTRODUCTION**

20         On November 26, 2019, Plaintiff Sun Hong Foods, Inc. ("Sun Hong" or

21    "Plaintiff") initiated this action against Defendants Outstanding Foods, Inc.

22    ("Outstanding"), William "Bill" Glaser ("Glaser"), and David "Dave" Anderson

23    ("Anderson") (collectively, "Defendants").  On December 16, 2019, Plaintiff filed

24    an application for a writ of attachment ("Application," ECF No. 7), including a

25    memorandum of points and authorities ("Application Memorandum," ECF No. 7-

26    1), a declaration of Jay Ding ("Ding Declaration," ECF No. 7-2), a declaration of

27    Jason R. Klinowski (ECF No. 7-3), a declaration of Kathryn S. Diemer (ECF No. 7-

28    4), and other related documents (ECF Nos. 7-5 to -7).  On February 5, 2020,

Defendants filed an opposition brief ("Opp'n," ECF No. 22), a declaration of William Glaser ("Glaser Declaration," ECF No. 22-1), and evidentiary objections ("Defendants' Evidentiary Objections," ECF No. 23). On February 10, 2020, Plaintiff filed its Reply, a request for judicial notice ("Plaintiff's Request for Judicial Notice," ECF No. 29-1), a response to Defendants' Evidentiary Objections ("Plaintiff's Response to Defendants' Evidentiary Objections," ECF No. 29-2), and its own evidentiary objections ("Plaintiff's Evidentiary Objections," ECF No. 30). The District Judge referred the Application to the undersigned Magistrate Judge. (ECF No. 32.) The Court held a hearing on the Application on July 8, 2020.

Based on the materials submitted and the oral argument at the hearing on the Application, the Court DENIES the Application without prejudice to Plaintiff's submission of a renewed application with sufficient evidentiary support.

## II.    BACKGROUND

In the Complaint (ECF No. 1), Plaintiff alleges the following:

On February 14, 2019 Plaintiff and Outstanding entered into an agreement for Plaintiff to supply king oyster mushrooms to Outstanding ("Agreement"). (Compl., at ¶ 23.) Outstanding agreed to purchase at least 3,200 cases ($42,400) of mushrooms. (*Id.*) Under the Agreement, Outstanding could reduce the amount purchased by giving at least fifty days prior written notice to allow time for Plaintiff to stop shipments from its overseas grower. (*See id.*, at ¶ 24.) Via letter dated September 19, 2019, Outstanding notified Plaintiff of its decision to terminate the Agreement. (*See id.*, at ¶ 25.) Plaintiff received the contract termination notice on September 20, 2019, which resulted in the effective termination of the Agreement on October 20, 2019. (*See id.*)

Between August 6, 2019 and October 10, 2019, Plaintiff delivered 20,960 11-pound boxes of mushrooms to Outstanding, valued at $453,854.45. (*See id.*, at ¶ 26.) The mushrooms originated in China and were delivered to Outstanding's

contract processor's plant in California and placed into cold storage.  (*See id.*, at ¶ 29.)  Plaintiff alleges that Outstanding was obliged to pay Plaintiff promptly for the produce it delivered, but that Outstanding did not pay the amount owed.  (*See id.*, at ¶¶ 33, 42.)

Plaintiff also alleges that Outstanding failed to preserve sufficient funds to fully satisfy all qualified Perishable Agricultural Commodities Act claims, and that Outstanding was insolvent.  (*See id.*, at ¶¶ 44, 50.)  Plaintiff alleges that Outstanding's "Principals," Anderson and Glaser, failed to cease business operations voluntarily and refrain from receiving and accepting produce on credit while the company was insolvent.  (*See id.*, at ¶ 52.)

On this basis, Plaintiff raises eleven claims for relief:

- <u>Count I</u>:  Enforcement of the Perishable Agricultural Commodities Act ("PACA") Trust;
- <u>Count II</u>:  PACA Violation: Failure to Maintain Trust;
- <u>Count III</u>:   PACA Violation (Unfair Trade Practice):  Failure to Promptly Pay;
- <u>Count IV</u>:  Breach of Contract;
- <u>Count V</u>:  Breach of Fiduciary Duty;
- <u>Count VI</u>:  Interference with Receipt of Trust Assets;
- <u>Count VII</u>:  PACA Violation (Unfair Trade Practice):  Breach of Express or Implied Duty;
- <u>Count VIII</u>:  Breach of Good Faith and Fair Dealing under PACA;
- <u>Count XI</u>:  Violation of California Business and Professions Code Section 17200;
- <u>Count X</u>:  Common Count:  Account Stated; and
- <u>Count XI</u>:  Common Count:  Open Book Account.

(*See generally, id.*)

///

### III.   THE PARTIES' CONTENTIONS

Plaintiff applies for a right to attach order and writ of attachment against Outstanding[1] in the amount of $461,994.45 on the basis of its breach of contract claim as stated in the Complaint[2] and the declarations submitted in support of the Application.  (Appl., at 2; Appl. Mem., at 4, 6–7.)[3]  It claims that the Application meets the four requirements for a pre-judgment writ of attachment under California law because (1) the claim is for money based upon a written contract, (2) the amount owed is an easily ascertainable amount greater than $500, (3) the claim is for unsecured funds, and (4) the claim arises from a business contract.  (Appl. Mem., at 3–6.)  In support of its Application, Plaintiff submits, among other evidence, a declaration of Jay Ding, a Manager of Sun Hong, in which Mr. Ding

---

[1] Although Plaintiff in one instance in the application materials states that he seeks these remedies against "Defendants" (Appl. Mem., at 6), and although Defendants filed their Opposition to the Application collectively (*see* Opp'n, at 1), Plaintiff's Application itself names only Outstanding as the defendant against whom it seeks the right to attach order and writ of attachment (Appl., at 1).  Regardless, it appears that all claims against Anderson were dismissed with prejudice after the conclusion of briefing on the Application.  (*See* ECF No. 47, at 9–10 (granting motion to dismiss claims against Anderson and warning that failure to file an amended complaint would result in dismissal of those claims with prejudice); ECF No. 58 (denying request for extension of time in which to amend complaint).)  Given the disposition of the Application on evidentiary grounds, the Court need not inquire further into whether Plaintiff seeks provisional remedies against Anderson and Glaser.

[2] Although Plaintiff checks a box in the Application form indicating that the Complaint is verified (*see* Appl., at 2), the Complaint lacks verification.  (*See generally* Compl.)  Even if the Complaint were verified, under California law, a corporation's verified complaint cannot support an application for a right to attach order.  *VFS Fin., Inc. v. CHF Express, LLC*, 620 F. Supp. 2d 1092, 1097 (C.D. Cal. 2009) (citing, *inter alia*, *Lorber Indus. v. Turbulence, Inc.*, 175 Cal. App. 3d 532, 536 (1985)).

[3] Pinpoint citations of page numbers in the Order refer to the page numbers appearing in the ECF-generated headers of cited documents.

states upon information and belief that Sun Hong and Outstanding entered into the Agreement attached to his declaration.  (Ding Decl., at ¶ 3; *id.*, at Ex. A.)  Mr. Ding avers that the principal amount due as a result of Outstanding's failure to make payments under the Agreement, as calculated in invoices attached as an exhibit to his declaration, is $428,279.50.  (*Id.*, at ¶ 4; *see also id.*, at Ex. B.)

In their Opposition, Defendants contend that the Application should be denied on the basis of deficiencies in the evidence Plaintiff presented in support of its Application.  (Opp'n, at 7–11.)  Specifically, Defendants contend that (1) the invoices Plaintiff submits in support of its Application are inadmissible hearsay, and Plaintiff has not established an exception to the rule against hearsay; and (2) the Agreement has not been submitted in admissible form because the Ding Declaration does not properly authenticate the document.  (*Id.*)  Further, Defendants note that Plaintiff did not file the required undertaking for the writ of attachment.  (*Id.*, at 11–12.)  Defendants further contend that the application fails because (1) Plaintiff has not established the probable validity of the breach of contract claim upon which the attachment may be issued, and (2) Plaintiff has not established the amount sought is readily ascertainable.  (*Id.*, at 12–20.)

In its Reply, Plaintiff argues that Defendants' evidentiary objections lack merit because the invoices supporting its Application are admissible under the business records exception to the rule against hearsay and because Mr. Ding has the personal knowledge required to authenticate the Agreement.  (Reply, at 4–7.)  Plaintiff states its intention to file an undertaking when the Application is granted.  (*Id.*, at 7–9.)  Finally, Plaintiff responds to Defendants' arguments as to the merits of the Application.  (*Id.*, at 9–15.)

## IV.   LEGAL STANDARD

Federal Rule of Civil Procedure 64 provides for prejudgment attachment, and other prejudgment remedies, as follows:

1
2
3
4

> At the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment. But a federal statute governs to the extent it applies.

5  Fed. R. Civ. P. 64(a).  Rule 64 codifies "long-settled federal law providing that in

6  all cases in federal court, whether or not removed from state court, state law is

7  incorporated to determine the availability of prejudgment remedies for the seizure

8  of person or property to secure satisfaction of the judgment ultimately entered."

9  *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No.*

10  *70*, 415 U.S. 423, 436 n.10 (1974); *accord United States v. Van Cauwenberghe*,

11  934 F.2d 1048, 1063 n.13 (9th Cir. 1991).

12      "Attachment is an ancillary or provisional remedy to aid in the collection of a

13  money demand by seizure of property in advance of trial and judgment."  *Kemp*

14  *Bros. Constr., Inc. v. Titan Elec. Corp.*, 146 Cal. App. 4th 1474, 1476 (2007)

15  (emphasis removed) (citation and quotation marks omitted).  "Attachment is a harsh

16  remedy because it causes the defendant to lose control of his property before the

17  plaintiff's claim is adjudicated."  *Martin v. Aboyan*, 148 Cal. App. 3d 826, 831

18  (1983).  In California, the procedures and grounds for obtaining orders permitting

19  prejudgment writs of attachment are governed by California Code of Civil

20  Procedure ("C.C.P.") sections 481.010–493.050.  *Pos-A-Traction, Inc. v. Kelly-*

21  *Springfield Tire Co.*, 112 F. Supp. 2d 1178, 1181 (C.D. Cal. 1999).  Since

22  California's attachment law is purely statutory, it must be strictly construed.  *Kemp*

23  *Bros.*, 146 Cal. App. 4th at 1476; *Pac. Decision Scis. Corp. v. Superior Court*, 121

24  Cal. App. 4th 1100, 1106 (2004).

25      "Generally, an order of attachment may be issued only in an action for a

26  claim of money which is based upon an express or implied contract where the total

27  amount of such claim is a fixed or 'readily ascertainable' amount not less than

28  $500.00."  *Pos-A-Traction*, 112 F. Supp. 2d at 1181–82 (citing C.C.P.

§ 483.010(a)).  "A prejudgment attachment may secure the amount of the claimed indebtedness, as well as estimated costs and allowable attorney's fees."  *Id.* at 1182 (citing C.C.P. § 482.110(b)); *Goldstein v. Barak Constr.*, 164 Cal. App. 4th 845, 852 (2008).

C.C.P. section 484.090 provides that before an attachment order is issued, the Court must find all of the following:

> (1)   The claim upon which the attachment is based is one upon which an attachment may be issued.
>
> (2)   The applicant has established the probable validity of the claim upon which the attachment is based.
>
> (3)   The attachment is not sought for a purpose other than the recovery on the claim upon which the request for attachment is based.
>
> (4)   The amount to be secured by the attachment is greater than zero.

C.C.P. § 484.090(a).  To establish the "probable validity" of the claim, the applicant must show "it is more likely than not" it will obtain a judgment against the defendant on its claim.  *Id.* § 481.190; *see also Blastrac, N.A. v. Concrete Solutions & Supply*, 678 F. Supp. 2d 1001, 1005 (C.D. Cal. 2010) ("In determining the probable validity of a claim . . . , the court must consider the relative merits of the positions of the respective parties and make a determination of the probable outcome of the litigation." (quoting *Loeb & Loeb v. Beverly Glen Music, Inc.*, 166 Cal. App. 3d 1110, 1120 (1985))).

> The moving party has the burden of establishing grounds for an attachment order.  *Pos-A-Traction*, 112 F. Supp. 2d at 1181; *Loeb & Loeb*, 166 Cal. App. 3d at 1116.  The four statutory elements must be established whether or not the defendant appears to oppose the issuance of the writ. *Bank of Am. v. Salinas Nissan, Inc.*, 207 Cal. App. 3d 260, 271 (1989).

The application for a right to attach order must be supported by an affidavit or declaration showing that the applicant "on the facts presented would be entitled

7

to a judgment on the claim upon which the attachment is based." C.C.P. § 484.030.
The affidavit or declaration must state the facts "with particularity." *Id.* § 482.040.
Except where matters are specifically permitted to be shown by information and
belief, each affidavit or declaration must show that the affiant or declarant, if sworn
as a witness, can testify competently to the facts stated therein. *Id.* "At a
minimum, this means that the affiant or declarant must show actual, personal
knowledge of the relevant facts, rather than the ultimate facts commonly found in
pleadings, and such evidence must be admissible and not objectionable." *Pos-A-
Traction*, 112 F. Supp. 2d at 1182. Moreover, "[a]ll documentary
evidence . . . must be presented in admissible form, generally requiring proper
identification and authentication, and admissibility as nonhearsay evidence or under
one or more of the exceptions to the hearsay rule, such as the business records
exception." *Id.* (citation omitted).

## V. DISCUSSION

### A. The Application Must be Denied Because Plaintiff Has Not Established the Probable Validity of the Breach of Contract Claim Upon Which the Attachment is Based.

As Plaintiff aptly states, to establish the requisite probable validity of the
breach of contact claim upon which the attachment is based, it must produce
evidence that: "(1) The parties had a valid contract; (2) Plaintiff performed all of its
obligations; (3) Defendant failed to perform on their obligations under the contract;
and (4) Plaintiff was harmed by Defendant's failure to perform." (Appl. Memo, at
5) (citing *Richman v. Hartley* (2014) 224 Cal. App. 4th 1182; Judicial Council of
California, Civil Jury Instruction No. 303).

Defendant contends that Plaintiff has failed to submit competent evidence to
establish the probable validity of its breach of contract claim. (Opp'n, at 14.) For
the reasons stated below, the Court agrees.

1      **1.**     *The Agreement on Which Plaintiff's Breach of Contract Claim*

2                    *Is Based Is Not Properly Authenticated.*

3          Defendants argue that Plaintiff does not establish the existence of a valid

4    contract in that it has not provided, in admissible form, the alleged Agreement

5    between Sun Hong and Outstanding.  Defendants contend that Mr. Ding does not

6    establish in his declaration that he has personal knowledge regarding the

7    Agreement, so he cannot authenticate the document.  (Opp'n, at 10–11; Defs.' Evid.

8    Objs., at 2–3, 6 (objecting to the Agreement and the part of the Ding Declaration

9    introducing the Agreement on basis of lack of foundation, lack of personal

10   knowledge, and improper authentication).)  Defendants argue that the Ding

11   Declaration is improperly predicated on information and belief, which is

12   insufficient to support an application for a right to attach order.  (Opp'n, at 10.)  In

13   response, Plaintiff highlights that Mr. Ding declares that his entire declaration is

14   made "of [his] own personal knowledge," and that he confirms the accuracy of the

15   Agreement "under penalty of perjury."  (Reply, at 3–4 (quoting Ding Decl., at ¶¶ 1,

16   8); Pl.'s Resp. to Defs.' Evid. Objs., at 1–2, 6.)

17         As set forth above, in support of an application for a right to attach order, a

18   declarant "must show actual, personal knowledge of the relevant facts," and

19   documentary evidence "must be presented in admissible form, generally requiring

20   proper identification and authentication."  *Pos-A-Traction*, 112 F. Supp. 2d at 1182;

21   see also Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is

22   introduced sufficient to support a finding that the witness has personal knowledge

23   of the matter."); Fed. R. Evid. 901(a) ("To satisfy the requirement of authenticating

24   or identifying an item of evidence, the proponent must produce evidence sufficient

25   to support a finding that the item is what the proponent claims it is.").

26         Here, Mr. Ding declares on "inform[ation] and belie[f]"—not pursuant to his

27   own personal knowledge—that the parties entered into the Agreement.  (Ding

28   Decl., at ¶ 3.)  Mr. Ding's declaration does not set forth any foundational facts

1  establishing that he has "actual, personal knowledge of the relevant facts"

2  specifically pertaining to the Agreement. *Pos-A-Traction*, 112 F. Supp. 2d at 1182.

3      Although Plaintiff seeks to remedy Mr. Ding's inartfully drafted statement by

4  highlighting his summary assertion that he has personal knowledge of the matters

5  contained in his declaration (*see* Reply, at 7 (citing Ding Decl., at ¶ 1)), such a

6  general assertion fails to substantiate Mr. Ding's competence regarding the creation

7  and terms of the Agreement or the business relationship between the parties. *See,*

8  *e.g.*, *Suzuki Motor of Am., Inc. v. Mullion*, No. SACV 17-00903-CJC (JDEx), 2017

9  U.S. Dist. LEXIS 221976, at *21 (C.D. Cal. Aug. 15, 2017) ("[A] general averment

10 of personal knowledge does not save [a declaration] where the substance of the

11 declaration does not show actual personal knowledge of the facts."); *Tesoro Ref. &*

12 *Mtkg. Co. v. Cal. Finest Oil*, No. 12-cv-1312-GPC-WVG, 2013 U.S. Dist. LEXIS

13 14947, at *9 (S.D. Cal. Feb. 4, 2013) (recognizing that, even though declarant had

14 "generally state[d] that he ha[d] personal knowledge of the facts, he fail[ed] to

15 substantiate his competence regarding the terms of the contract, the circumstances

16 surrounding the alleged breach of contract, or even the general terms of the

17 business relationship between [the parties]"). Indeed, despite Plaintiff's arguments

18 that the "statement of information and belief" prefacing the paragraph discussing

19 the Agreement "is only intended to apply to the introductory sentence" (Reply, at

20 7), Mr. Ding does not provide a foundation for his personal knowledge pertaining

21 to the Agreement other than his vague statements that he is "familiar with"

22 Outstanding's account. (Ding Decl., at ¶ 2.) This is not enough.

23     Again seeking to use Defendants' Opposition against them, Plaintiff notes

24 that Defendants "rely[] heavily on several alleged writings between Jay Ding and

25 officers of Defendant which clearly show that Jay Ding was one of, if not the main,

26 point of contact between the parties." (Reply, at 7 (citing Glaser Decl., Exs. 2–3).)

27 Even assuming they were admissible, the documents presented by Defendants

28 pertain to the parties' interactions in August and September 2019. (*See* Glaser

10

Decl., Exs. 2–3.)  They do not provide a foundation for Mr. Ding's personal knowledge pertaining to the Agreement itself.  It may be true that Mr. Ding actually has personal knowledge of the Agreement sufficient to authenticate it, and the Court's analysis here does not prevent Mr. Ding from establishing his personal knowledge and authenticating the document.  But Plaintiff bears the burden of offering admissible evidence in support of its Application, *see VFS Fin.*, 620 F. Supp. 2d at 1097, and neither the Ding Declaration nor the documents Defendants cite in their Opposition demonstrate that Mr. Ding has personal knowledge regarding the Agreement sufficient to authenticate it.  *See* Fed. R. Evid. 602, 901.

On this basis, the Court sustains Defendants' improper-authentication objection to the admission of the Agreement attached to the Ding Declaration (Defs. Evid. Objs., No. 5).  The absence of a valid contract between the parties is, without more, fatal to Plaintiff's efforts to establish "probable validity" of its breach of contract claim.

### 2.     *The Invoices Supporting Defendants' Unpaid Balances Are Inadmissible Hearsay.*

Defendants argue that Plaintiff does not establish it was harmed by Defendant's failure to perform in that it has not provided, in admissible form, the invoices purportedly documenting Defendants' unpaid balances.  Defendants argue that Plaintiff's invoices, which purportedly show the amount unpaid by Outstanding and in controversy in this action, are not presented in admissible form.  (Opp'n, at 8–9; *see also* Defs.' Evid. Objs., at 4–7 (objecting to the invoices and the part of the Ding Declaration introducing the invoices on basis of lack of foundation, lack of personal knowledge, improper authentication, and hearsay).)  In advancing their argument that the validity of the invoices is in issue, Defendants submit and review an invoice dated July 18, 2019 for a shipment not in dispute and note several purported irregularities in that invoice and the invoices attached to the Complaint.

(Opp'n, at 9–10.)  In response, Plaintiff contends that the invoices are admissible under the business records exception to hearsay.  (Reply, at 4–5.)  Plaintiff argues that Defendants, by referring to and introducing into evidence these invoices, "effectively admit[] that the invoices meet the business records exception to the hearsay rule."  (*Id.*, at 5.)  Sun Hong provides no authority in support of its argument.  (*See id.* at 5–6; see also Pl.'s Resp. to Defs.' Evid. Objs., at 4, 7 (summarily asserting that the invoices are documents subject to the business records exception).)

The Court agrees with Defendants.  Hearsay is not admissible absent an exception.  Fed. R. Evid. 802.  Federal Rule of Evidence 803(6) provides one such exception—a business record may be admissible if:

> (A)  the record was made at or near the time by—or from information transmitted by—someone with knowledge;
>
> (B)  the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
>
> (C)  making the record was a regular practice of that activity;
>
> (D)  all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with [Federal Rule of Evidence] 902(1) or (12) or with a statute permitting certification; and
>
> (E)  the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6); *see also Sea-Land Serv., Inc. v. Lozen Int'l, LLC*, 285 F.3d 808, 819 (9th Cir. 2002) ("Rule 803(6) allows the admission of business records when two foundational facts are proved:  (1) the writing is made or transmitted by a person with knowledge at or near the time of the incident recorded, and (2) the

record is kept in the course of regularly conducted business activity." (citation and quotation marks omitted)).  Plaintiff has the affirmative burden of providing admissible evidence in support of its application for a writ of attachment.  *See VFS Fin., Inc. v. CHF Express, LLC*, 620 F. Supp. 2d 1092, 1097 (C.D. Cal. 2009).

Plaintiff has failed to do so here.  The Ding Declaration does not lay the foundation required for the Court to conclude that the invoices meet the business records exception to the hearsay rule.  Mr. Ding merely asserts that the invoices attached to his declaration are "a true and correct copy."  (Ding Decl., at ¶ 4.)  This is insufficient.  Mr. Ding fails to provide facts showing that the invoices were made or transmitted by a person with knowledge at or near the time of the incident recorded, and that the invoices are kept in the course of regularly conducted business activity.  *See* Fed. R. Evid. 803(6); *Sea Land*, 285 F.3d at 819.

As its sole contention in response to Defendants' challenge to the admissibility of the invoices, Plaintiff argues that Defendants "effectively admit[]" the invoices are business records by producing an invoice not in controversy in support of their argument.  (Reply, at 5.)  Plaintiff does not cite, and the Court has not found, any authority providing that a party can waive involuntarily the foundational requirements of Federal Rule of Evidence 803(6).  Moreover, Defendants' introduction of the July 18, 2019 invoice, a document separate from and unrelated to the allegedly unpaid invoices Plaintiff seeks to introduce in support of the Application, does not amount to an express or implied admission that Plaintiff's invoices are subject to the business records exception.  Although a party may provide appropriate foundation for a business record by admission, *see United States v. Seelig*, 622 F.2d 207, 214 (6th Cir. 1980); *Castaic Lake Water Agency v. Whittaker Corp.*, 272 F. Supp. 2d 1053, 1061 n.8 (C.D. Cal. 2003), the mere fact that a party introduces a business record into the litigation "does not by itself establish the foundation for admission of a document as a business record" pursuant to Federal Rule of Evidence 803(6).  *JIPC Mgmt. v. Incredible Pizza Co.*, No. CV

08-04310 MMM (PLAx), 2009 U.S. Dist. LEXIS 133019, at *81–82 (C.D. Cal. July 14, 2009) (stating this proposition in context of party's production of its "business records" pursuant to Fed. R. Civ. P. 33(d)).  In any event, Mr. Glaser's declaration does not establish the foundation for the business records exception as to the July 18, 2019 invoice, let alone the invoices purportedly showing the unpaid amounts in controversy in this action.  In short, neither Plaintiff in its Application papers nor Defendants in opposing the Application establish that Plaintiff's invoices were generated at or near the time by someone with knowledge, that they were kept in the course of a regularly conducted activity of a business, and that making them was a regular practice of the activity.  Fed. R. Evid. 803(6)(A)–(C).

On this basis, the Court sustains Defendants' hearsay objection to the admission of the invoices attached to the Ding Declaration (Defs.' Evid. Objs., No. 6).

### B.   The Application Must be Denied Because Plaintiff Has Not Established the Probable Validity of the Common Counts Upon Which the Attachment Could Be Based.

At oral argument, Plaintiff raised for the first time the argument that, even if probable validity could not be established as to its breach of contract claim, it could be established as to the alleged Common Counts X and XI—Account Stated and Open Book Account.  Defendant responded that this argument was not properly before the Court, having been raised in neither Plaintiff's Application nor its Reply, and therefore it should not be considered.  The Court agrees with Defendant that Plaintiff's new argument is not entitled to consideration.  *See Johnson v. Gruma Corp.*, 614 F.3d 1062, 1069 (9th Cir. 2010) (arguments raised for the first time at oral argument are waived).  Nevertheless, the Court easily can conclude that, even if considered, Plaintiff's new argument does not save his Application based on the evidence before the Court.

14

To establish the requisite probable validity of an Account Stated claim, Plaintiff must establish the existence of:  "(1) previous transactions between the parties establishing the relationship of debtor and creditor; (2) an agreement between the parties, express or implied, on the amount due from the debtor to the creditor; and (3) a promise by the debtor, express or implied, to pay the amount due." *Zinn v. Fred R. Bright Co.*, 271 Cal. App. 2d 597, 600 (1969).  For the reasons stated above, Mr. Ding's declaration fails to establish the existence of an agreement between the parties.  Accordingly, the evidence before the Court does not support a finding of probable validity as to Plaintiff's Account Stated claim.

Nor does the evidence before the Court support a finding of probable validity as to Plaintiff's Open Book Account claim.  Under California law, in relevant part, a "book account" is defined as:

> [A] detailed statement which constitutes the principal record of one or more transactions between a debtor and a creditor arising out of a contract or some fiduciary relation, and shows the debits and credits in connection therewith, and against whom and in favor of whom entries are made, is entered in the regular course of business as conducted by such creditor or fiduciary, and is kept in a reasonably permanent form and manner.

Cal. Civ. Proc. Code § 337a (West 2020).

Further to this definition, California courts have expounded additional elements of an Open Book Account claim. Most significant in connection with Plaintiff's new argument is that "[a] book account is created by the agreement or conduct of the parties in a commercial transaction."  *H. Russell Taylor's Fire Prevention Serv., Inc. v. Coca Cola Bottling Corp.*, 99 Cal. App. 3d 711, 728 (1979).  That is to say, if there is "no evidence of an agreement" between the parties to form a book account, and if the parties' conduct does not "show that they intended or expected such an account would be created," then "there is insufficient

///

15

1   evidence to support the finding of an open book account." *See Maggio, Inc. v.*

2   *Neal*, 196 Cal. Ap. 3d 745, 752 (1987).

3       To find such an agreement or expectation, a court must find that:

4           the parties intend that the individual items of the account
            shall not be considered independently, but as a connected
5           series of transactions, and that the account shall be kept
            open and subject to a shifting balance as additional related
6           entries of debits and credits are made, until it shall suit the
            convenience of either party to settle and close the account,
7           and where, pursuant to the original express or implied
8           intention, there is but one single and indivisible liability
            arising from such series of related and reciprocal debits
9           and credits.

10

11  *R.N.C., Inc. v. Tsegeletos*, 231 Cal. App. 3d 967, 972 (1991).

12      Here, no evidence of agreement or expectation exists.  As stated above, Mr.

13  Ding's declaration fails to establish the existence of an agreement between the

14  parties, let alone an agreement to form a book account.  (*See, generally,* Ding

15  Declaration.)  Moreover, Mr. Ding's declaration does not discuss the parties'

16  expectations.  (*Id.*)  Accordingly, the Court is unable to find probable validity as to

17  Plaintiff's Open Book Account claim on the evidence before it.

18

19      **C.   The Application Must Be Denied for Lack of Admissible Evidence.**

20      Because the Application is not supported by competent, admissible evidence,

21  the Court has not been presented with any basis upon which to determine that the

22  "probable validity" requirement of C.C.P. section 484.090 is met.  *See, e.g.*, *Suzuki*

23  *Motor*, 2017 U.S. Dist. LEXIS 221976, at *20–23 (denying motion for right to

24  attach order on basis of lack of foundation for declaration offered as sole evidence

25  supporting motion); *Tesoro*, 2013 U.S. Dist. LEXIS 14947, at *8–10 (denying

26  application for right to attach order because, *inter alia*, applicant failed to lay

27  foundation for admissibility of documents under the business records exception to

28  the hearsay rule).  The Application is denied without prejudice.

The Court also overrules as moot Plaintiff's Evidentiary Objections and the balance of Defendants' Evidentiary Objections not discussed in this Order.  The Court also denies as moot Plaintiff's Request for Judicial Notice.

## VI.    CONCLUSION

IT THEREFORE IS ORDERED:

1.   The Court SUSTAINS Defendants' hearsay objection to the admission of the invoices attached to the Ding Declaration (Defs.' Evid. Objs., No. 6).

2.   The Court SUSTAINS Defendants' improper-authentication objection to the admission of the Agreement attached to the Ding Declaration (Defs.' Evid. Objs., No. 5).

3.   The Application is DENIED WITHOUT PREJUDICE to renewal of an application for a right to attach order and writ of attachment upon competent evidence.

4.   The Court OVERRULES AS MOOT the balance of Defendants' Evidentiary Objections not discussed in this Order.

5.   The Court OVERRULES AS MOOT Plaintiff's Evidentiary Objections.

6.   The Court DENIES AS MOOT Plaintiff's Request for Judicial Notice.

IT IS SO ORDERED.

DATED:  July 9, 2020

_____
MARIA A. AUDERO
UNITED STATES MAGISTRATE JUDGE

17